DR. MARTIN LUTHER KING, JR. MOVEMENT INC., an Illinois Corporation, Rev. Alexander I. Dunlap, and Rev. Edgar Jackson, Plaintiffs,

v.

CITY OF CHICAGO, a Municipal Corporation, Department of Streets and Sanitation, Richard J. Daley, Mayor, City of Chicago, James M. Rochford, Superintendent of Police, City of Chicago, William R. Quinlan, Corporation Counsel, City of Chicago, Hugh R. Short, Deputy Commissioner, Department of Streets and Sanitation, City of Chicago, Kenneth Sain, Deputy Mayor, City of Chicago, and Commander Rice, Commander of Seventh Police District, Defendants,

The Southwest Parish and Neighborhood Federation et al., Intervening-Plaintiffs.

No. 76 C 2483.

United States District Court, N. D. Illinois, E. D.

July 19, 1977.

Edward T. Stein, Edwards, Haney, Singer & Stein, Mayron Gray, Chicago, Ill., for plaintiffs.

William R. Quinlan, Synek, Bishart & Porikos, Chicago, Ill., for defendants.

William Goetz and Gail Cichanowski, for the Southwest Parish and Neighborhood Federation, an Illinois Corp.

## MEMORANDUM DECISION

MARSHALL, District Judge.

This civil rights action seeking declaratory and injunctive relief, and damages is one of three actions arising out of plaintiffs'

efforts to hold marches and rallies in Chicago during June and July, 1976.[1] Jurisdiction is asserted under 28 U.S.C. §§ 1331 and 1343 to secure rights protected under the Fourteenth Amendment to the Constitution and 42 U.S.C. §§ 1983 and 1985. Before addressing the issues raised by defendants' pending motion to dismiss, it is necessary to review the allegations of the complaint and the procedural history of this and the related actions.

Plaintiff Dr. Martin Luther King, Jr. Movement, Inc. (King) is a not-for-profit Illinois corporation which seeks to secure equal opportunities for all people, to obtain open housing, to end segregation in schools, and to obtain employment for all people, particularly black people. To accomplish its goals, King conducts marches, rallies, and assemblies in order to communicate with citizens and have them join in its efforts. Plaintiff Reverend Alexander I. Dunlap is the president and executive secretary of King, and plaintiff Reverend Edgar Jackson is one of King's members. The defendants are the City of Chicago, the Department of Streets and Sanitation of Chicago, and six individual defendants who are all city officials sued individually and in their official capacity: Mayor Richard J. Daley;[2] James M. Rochford, Superintendent of the Chicago Police Department; William R. Quinlan, Corporation Counsel of Chicago; Hugh R. Short, Deputy Commissioner of the Department of Streets and Sanitation; Kenneth Sain, Deputy Mayor; and Commander Rice, Commander of the Seventh Police District of the City of Chicago. Plaintiffs allege that each of these defendants have frustrated plaintiffs' efforts to express their views by illegally arresting them and others, by denying their applications for parade permits, and by engaging in a program of police surveillance, harassment, and intimidation.

During June, 1976, plaintiffs and others marched nightly on the sidewalks of communities on the south side of Chicago. When the plaintiffs marched in a predominantly black community known as Englewood, where King's headquarters are situated, they were undisturbed by the police. However, when the marchers went into Marquette Park, a predominantly white neighborhood adjacent to Englewood, they were frequently arrested. Plaintiffs allege that between June 8 and June 12, 1976, more than 25 charges were placed against them arising out of their marches in Marquette Park.

Plaintiffs further allege that the Bureau of Fire Prevention of the City of Chicago sent King an inspection notice as part of the "broad framework" to "blunt and crush" the plaintiffs' activities. Finally, plaintiffs allege that the Department of Streets and Sanitation, through Deputy Commissioner Short, illegally denied them parade permits on two occasions. The facts underlying this claim have been summarized by Judge Leighton in a memorandum decision in D.C., 419 F.Supp. 667:

Acting through authorized representatives, [plaintiff Dr. Martin Luther King Movement] applied to the Department of Streets and Sanitation of the City of Chicago for a permit which would have allowed 250 persons to parade, march to and assemble in [Marquette] park on June 26, 1976. The application was denied because it was " * * * the opinion of the Bureau of Street Traffic that the proposed event would inconvenience a large number of the traveling public. In addition, recent occurrences in the vicinity have precipitated a highly emotional condition in the area and would require the Police Department to supply a large amount of personnel to properly protect participants in the activity." Thereafter, plaintiffs made another application for a

1. This action complains of defendants' alleged unconstitutional refusal to permit marches planned for June 26 and July 10 (postponed to July 17) 1976; 76 C 2923, which is pending before Judge Leighton complains of defendants' alleged unconstitutional refusal to permit a march and rally planned for August 21, 1976; 76 C 2957, [D.C., —— F.Supp. ——] now also

pending before us, complains of physical injuries suffered by plaintiffs and others during the march of July 17, 1976.

2. Under Fed.R.Civ.P. 25(d)(1), to the extent that Mayor Daley was sued officially, his successor in office is automatically substituted as a party defendant after his death.

permit that would have allowed 250 persons to parade, march to and assemble in Marquette Park on Saturday, July 10, 1976. In response to this application, plaintiffs received a letter from the Department of Streets and Sanitation which, in part, told them:

Please be informed that you indicated an interim assembly area as Marquette Park. The Department of Streets and Sanitation does not have jurisdiction over these facilities and authorization must be received from the Chicago Park District.

In addition the movement of traffic in this area is critical on Saturdays and it is the opinion of the Bureau of Street Traffic that the proposed event would inconvenience a large number of the traveling public.

Finally, recent occurrences in the vicinity have precipitated a highly emotional condition in the area and would require the Police Department to supply a large amount of personnel to properly protect participants in the activity.

The Department of Police has informed us that they do not have the available manpower for this purpose.

In view of the above and in accordance with Section 36–31 of the Municipal Code of Chicago we must deny your request.[3]

■ After the second denial, plaintiffs filed this action seeking declaratory relief, injunctive relief, and damages. In Count I, plaintiffs request a declaratory judgment that the parade permit ordinance is unconstitutional on its face and as applied;[4] an injunction compelling the issuance of a parade permit for the march on July 10, 1976, and to provide adequate police protection for all march participants; and injunctive relief preventing defendants from illegally denying plaintiffs' parade permits in the future and compelling them to provide adequate protection to plaintiffs in exercising their First Amendment rights of speech and assembly. In Count II, plaintiffs seek compensatory and punitive damages.

After filing their complaint, plaintiffs quickly moved for a temporary restraining order or a preliminary injunction. On July 12, Judge Grady, sitting as emergency judge, issued an order granting plaintiffs' motion for a preliminary injunction directing defendants to permit plaintiffs to hold a parade on July 17, 1976. As a result of violence which was allegedly inflicted on plaintiffs during that parade, they have also brought 76 C 2957, 435 F.Supp. 1295 (N.D.Ill.1977).

The issue currently before the court is whether the instant complaint in 76 C 2483 should be dismissed for lack of jurisdiction or failure to state a claim upon which relief may be granted. We are not now concerned with the ultimate issue of the constitutionality of the parade permit ordinance, or the question of the appropriate relief. Defendants initially claim that the action should be dismissed because it is moot. Additionally, they urge that the City of Chicago and the Department of Streets and Sanitation must be dismissed because these two entities cannot be sued under § 1983, and because no substantial federal question is raised. Finally, they claim that the complaint is too conclusory and does not give

---

3. Judge Leighton issued this opinion on September 13, 1976, in *Dr. Martin Luther King, Jr. Movement, Inc. v. City of Chicago,* 419 F.Supp. 667, 671 (N.D.Ill.1976). The case was based on plaintiffs' efforts to hold a similar march on August 21, 1976.

4. Defendants point out that plaintiffs do not ask to have the parade permit ordinance stricken in their prayer for relief, but they merely ask the court to declare that the denial of the request for a parade permit is unconstitutional on its face and as applied. Technically, this observation is correct. Yet plaintiffs specifically claim in their briefs and in the body of the complaint that the ordinance is unconstitutional on its face, and they have included in their prayer for relief a request that the court grant "such other further relief as may be equitable and just." We do not understand what plaintiffs mean when they claim that a particular denial is unconstitutional on its face and as applied, since it is the ordinance itself which may be challenged in these two ways. The only sensible interpretation is that plaintiffs mean to attack the ordinance itself. We take judicial notice that the constitutionality of the ordinance is a question currently pending in the case before Judge Leighton cited in n. 3, *supra.*

the defendants adequate notice of the charges to which they must respond.

## I. *Mootness*

■ Insofar as plaintiffs seek injunctive relief regarding their march on July 10, 1976, their complaint is moot. An injunction was granted by Judge Grady and the march was held on July 17. *Compare, Dr. Martin Luther King, Jr. Movement, Inc. et al. v. City of Chicago,* D.C., 419 F.Supp. 667 (N.D.Ill.1976). Plaintiffs' prayers for declaratory relief, and for damages to compensate for past injury, however, are not moot. Nor is plaintiffs' request for permanent injunctive relief. The complaint alleges that defendants have engaged in a pattern of harassment and intimidation designed to prevent plaintiffs from exercising constitutionally protected rights. On two occasions, plaintiffs were unable to obtain parade permits. Defendants do not argue that plaintiffs have now lost their interest in conducting marches to express their grievances. Therefore, the claim for permanent injunctive relief should not be dismissed on the grounds of mootness. *Allee v. Medrano,* 416 U.S. 802, 809–11, 94 S.Ct. 2191, 40 L.Ed.2d 566 (1974); *Illinois Migrant Council v. Pilliod,* 540 F.2d 1062, 1067 (7th Cir. 1976); *modified en banc on other grounds,* 548 F.2d 715 (7th Cir. 1977). To prevail, of course, plaintiffs must show not only that they are entitled to a mandatory injunction under the traditional criteria, but also that injunctive relief is essential despite the considerations of federalism militating against federal court interference with a police department, *Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976); *Calvin v. Conlisk,* 520 F.2d 1 (7th Cir. 1975), *vacated on other grounds,* 424 U.S. 902, 96 S.Ct. 1093, 47 L.Ed.2d 307 (1976), *dismissed on other grounds on remand,* 534 F.2d 1251 (7th Cir. 1976).

## II. *Liability of Governmental Entities*

■ The City of Chicago claims that it should be dismissed because the court lacks subject matter jurisdiction over it, or alternatively, because the court should not imply a remedy against it under a theory of *respondeat superior.* The City's first conten-tion is without merit. When a complaint alleges that a municipality or other governmental entity itself acts in violation of the constitution, subject matter jurisdiction is present under 28 U.S.C. § 1331, the general federal question provision, if the jurisdictional amount is met. *Hostrop v. Bd. of Jr. College Dist. No. 515,* 523 F.2d 569, 577 (7th Cir. 1975). In this case, the complaint does allege that defendants infringed on plaintiffs' constitutional rights and that plaintiffs sustained damages in excess of $10,-000, exclusive of interest and costs. Since it does not appear to a legal certainty that plaintiffs will recover less than that amount, we are content that the requisite jurisdictional amount exists. *Mt. Healthy City School Dist. v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 570, 50 L.Ed.2d 471 (1977). That municipalities are not "persons" under § 1983 and may not be sued under that statute, *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); *City of Kenosha v. Bruno,* 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973), does not defeat federal court jurisdiction under § 1331.

The issue of whether a municipality is vicariously liable in money damages for unconstitutional acts of its employees and agents is more troublesome. We have held that a municipality must respond in money damages for unconstitutional acts of its employees though the municipality itself was not guilty of any wrongdoing. *Anderson v. Woodlock,* 435 F.Supp. 1229 (N.D.Ill. Apr. 25, 1977); *Williams v. Brown,* 398 F.Supp. 155 (N.D.Ill.1975). We relied on the theory of *Bivens v. Six Unknown Named Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), decisions of other lower courts, and a number of policy reasons which support a theory of vicarious liability. *Williams v. Brown,* 398 F.Supp. at 155.

Since the filing of the briefs in the pending motion, the Court of Appeals for the Seventh Circuit has refused to imply a remedy in money damages against a county on a theory of *respondeat superior* for the alleged unconstitutional acts of its agent because such a remedy would be "out of harmony with the doctrine built up under § 1983, a drastic extension of the decided cases, and we are not persuaded of the

existence of a sufficient need." *McDonald v. State of Illinois,* 557 F.2d 596 (7th Cir. 1977). In *McDonald,* the court noted two ways in which a governmental unit could subject itself to monetary liability for deprivation of constitutional rights. First, the unit could take action itself, as by firing an employee and depriving him of a property right. *E. g., Hostrop v. Bd. of Jr. College Dist. No. 515,* 523 F.2d 569 (7th Cir. 1975). Second, the court suggested the unit could adopt a policy requiring its employee or agent to do some act. The court implied that adopting a policy is an act of the city itself, and if the policy requires an employee to do a particular act, the city as well as the employee should bear the responsibility for the injury inflicted by the action. In *McDonald,* the court dismissed the local governmental body, Cook County, because the complaint failed to allege that any policy of the County or of the County Department of Corrections required the individual defendant to act as he did.

■ We are satisfied, however, that the allegations of the instant complaint sufficiently implicate a policy of the City of Chicago and its Department of Streets and Sanitation to preclude dismissal of the City. Plaintiffs contend that they applied for parade permits pursuant to § 36–31 of the Municipal Code of the City of Chicago. That section provides in part that applications for parade permits shall be made to the Department of Streets and Sanitation. The Commissioner of Streets and Sanitation shall issue a permit when he finds that four enumerated conditions are met. If they are, the ordinance does not give the Commissioner discretion to deny the permit, but requires him to grant it. The complaint alleges that Deputy Commissioner Short twice denied plaintiffs' applications for parade permits, and letters of denial are appended to the complaint which purport to apply the criteria in the ordinance. Finally, plaintiffs contend that the ordinance itself is unconstitutional on its face and as applied. In these circumstances, we conclude that plaintiffs are in fact attacking a policy of the City of Chicago and its Department of Streets and Sanitation. Therefore, under *McDonald,* the motion to dismiss on the grounds that the City is not liable for damages under § 1331 is denied.

■ Defendant Department of Streets and Sanitation avers that it is not a suable entity. We agree. The department is merely an organizational division of the City and does not enjoy independent legal existence. Accordingly, the Department of Streets and Sanitation will be stricken as a separate defendant.

### III. Sufficiency of Complaint

■ Next, defendants claim that the complaint is entirely too conclusory to state a claim upon which relief may be granted. As described above, plaintiffs allege two distinct sources of injury. First, plaintiffs complain of their inability to procure parade permits. These allegations concern defendants City of Chicago, its Department of Streets and Sanitation, and Deputy Commissioner Short, who denied the parade permits. Complaint, Exhibits B and D. Two instances of denial are alleged, and these allegations are sufficiently specific to give these defendants notice of their conduct under *Fed.R.Civ.P.* 8.

■ The allegations of massive police surveillance, harassment, and intimidation, however, are too conclusory to state a claim for relief. Though plaintiffs allege that many marchers were arrested and that King received an inspection notice, no allegations connect either the arrests or the inspection notice to the acts of any named defendant.

We cannot state a formula for testing the sufficiency of this type of complaint. But if we give the complaint the generous construction to which it is entitled, it is insufficient to withstand a motion to dismiss as to the remaining defendants. The complaint must be dismissed as to defendants Daley, Rochford, Quinlan, Sain and Rice, individually and in their official capacities.

An order has been entered in accord with the foregoing. Defendants City of Chicago and Hugh R. Short, individually and as Deputy Commissioner of the Department of Streets and Sanitation, are ordered to answer in 20 days.