Rev. A. I. DUNLAP, Edgar Jackson, Suzanne Davenport, Earley Benton, Individually and as representatives of all other persons similarly situated, and Dr. Martin Luther King, Jr. Movement, Inc., Plaintiffs,

v.

The CITY OF CHICAGO, an Illinois Municipal Corporation, Mayor Richard J. Daley, James M. Rochford, Police Superintendent, Charles Pepp, Deputy Chief, Fred Rice, Commander, Kenneth Earner, John Doe, Richard Roe, and others whose names are not presently known to the Plaintiffs, Defendants.

No. 76 C 2957.

United States District Court,
N. D. Illinois, E. D.

July 19, 1977.

Singer, Stein & Green, Chicago, Ill., for plaintiffs.

William R. Quinlan, James P. Daley, Chicago, Ill., for the City of Chicago, Richard J. Daley, James Rochford, Charles Pepp and Fred Rice.

## MEMORANDUM DECISION

MARSHALL, District Judge.

On July 17, 1976, plaintiffs participated in a march sponsored by the Dr. Martin Luther King, Jr. Movement, Inc., in a community on the south side of Chicago known as Marquette Park. During the march, a hostile crowd insulted the marchers and hurled rocks, bottles, bricks and explosives at them. Many participants in the march were injured. Thereafter, plaintiffs brought this civil rights action for damages against the City of Chicago, Mayor Daley, Police Superintendent James M. Rochford, Deputy Chief Charles Pepp, Commander Fred Rice, and individual officers of the Chicago Police Department who were present at the march. Reduced to bare essentials, plaintiffs' theory is that defendants, by action and inaction, breached their duty to protect the plaintiffs as they tried to express their opposition to racism in a peaceful and lawful manner. Jurisdiction is here under 28 U.S.C. § 1343 and 28 U.S.C. § 1331 to redress rights protected under the Fourteenth Amendment and under 42 U.S.C. § 1983 and 42 U.S.C. § 1985. Defendants' motion to dismiss has been fully briefed and is ready for decision.

The factual background of the plaintiffs' activities has been fully stated in two earlier cases stemming from the activities of the Dr. Martin Luther King, Jr. Movement and its leaders, Rev. Alexander I. Dunlap and Rev. Edgar Jackson, in the spring and summer of 1976. *Dr. Martin Luther King, Jr. Movement, Inc. v. City of Chicago*, No. 76 C 2483 (N.D.Ill. 1977), 435 F.Supp. 1289 (*King I*), and *Dr. Martin Luther King, Jr. Movement, Inc. v. City of Chicago*, 419 F.Supp. 667 (N.D.Ill. 1976) (*King II*). For purposes of ruling on the motion to dismiss

the instant action (*King III*), the following statement is sufficient.

On July 12, 1976, in *King I*, Judge Grady granted plaintiffs' motion for a preliminary injunction permitting members of the movement to march in the Marquette Park area. Specifically, Judge Grady ordered the defendant, Department of Streets and Sanitation of Chicago, to issue a parade permit to the plaintiffs for July 17, 1976, to march and assemble along a prescribed route, at a set time, and in limited numbers. Judge Grady further ordered that "defendants shall provide police in such numbers as in their professional judgment are required to afford adequate protection to plaintiffs." In his memorandum accompanying the order, Judge Grady recognized that the parade might stimulate some violence, but expressed the view that "the parties here can, by the exercise of good judgment in their public pronouncements, do much to alleviate the situation." Although plaintiffs wished to march on July 10, Judge Grady delayed the march until July 17 to enable the City to organize police protection for the marchers.

Judge Grady's hopes that the march would be peaceful did not come to pass. Shortly after the march was commenced and aborted by the violent bystanders, plaintiffs moved in *King I* for a rule to show cause why defendants should not be held in contempt for violating that portion of the July 12 order requiring defendants to provide adequate police protection. Plaintiffs orally characterized the proceeding as one for civil, not criminal contempt. Transcript of Proceedings on August 31, 1976, at 3 (hereinafter "Transcript"). Judge Grady held a two-day hearing on the motion and denied it on September 1, 1976. In an oral ruling, Judge Grady summarized his conclusions as follows:

> I find no evidence whatsoever that the police department or any individual police officers violated the order of this Court. On the contrary, I find that the police of the City of Chicago on this occasion con-

ducted themselves with exemplary courage and dedication. Transcript at 240.

Meanwhile, plaintiffs had filed their instant action for damages.[1] The repetitious complaint is in five counts, each relying on a different legal theory. Count I alleges that defendants intentionally assaulted plaintiffs and committed battery upon them. Count II alleges that defendants failed to apprehend or stop hostile bystanders as they threw debris upon the marchers. Count III alleges that the police and other defendants conspired to encourage and incite violence against the plaintiffs. Count IV, which is reminiscent of Count II, alleges that defendants neglected or refused to stop wrongful acts which caused injury to the plaintiffs. Count V seeks damages against the City of Chicago based on a theory of *respondeat superior*.

## I. *Justiciability*

First, defendants claim that the complaint as a whole must be dismissed because the controversy is nonjusticiable. They assert that courts are not equipped to evaluate police practices and have been warned by the Supreme Court to avoid intrusion into the operation of a police department. Defendants rely on *Rizzo v. Goode*, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976); *O'Shea v. Littleton*, 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974), and *Gilligan v. Morgan*, 413 U.S. 1, 93 S.Ct. 2440, 37 L.Ed.2d 407 (1974). But those cases do not support defendants' position. In all of them, the Court cautioned lower federal courts not to issue unnecessary mandatory injunctions which interfere with the internal management of police departments. Here, plaintiffs are not interested in enjoining anything and do not invoke the court's equitable powers. Instead, they seek damages to redress past injury. Moreover, the above cases reaffirm the principle that before a court can act, a plaintiff with a concrete injury must stand before the court. Here, plaintiffs do claim that they have suffered specific and serious injuries resulting from defendants' alleged uncon-

---

1. The action was originally assigned to Judge Decker and then reassigned here as related to the earlier filed 76 C 2483, D.C., 435 F.Supp. 1289 (*King I*). Local Rule 2.31(E)(ii).

**1298**

stitutional acts and omissions on July 17, 1976. The subject matter of the controversy is appropriate for judicial resolution.

■ A corollary of defendants' nonjusticiability argument is that plaintiff Dr. Martin Luther King, Jr. Movement, Inc., lacks standing to be a plaintiff. In *Calvin v. Conlisk*, 534 F.2d 1251 (7th Cir. 1976), the court held that the plaintiff organization lacked standing to sue because the threat of injury to its members was too remote and hypothetical. Here, on the other hand, the injury to the plaintiff organization was very real. Many marchers who were injured were members of the plaintiff organization. The King Movement was the sponsor of the march. These facts provide a sufficient basis for standing and distinguish the instant case from *Calvin*.

■ Not only is the controversy justiciable, but it is clear that the complaint states a claim upon which relief may be granted. Taking the allegations of the complaint as true, plaintiffs were engaged on July 17 in peaceful expression of their views in public, an activity which is generally protected by the First Amendment and was specifically authorized by Judge Grady's order. Section 1983 imposes an affirmative duty upon police officers to protect speakers who are airing opinions which may be unpopular. "A police officer has the duty not to ratify and effectuate a heckler's veto, nor may he join a moiling mob intent on suppressing ideas. Instead, he must take reasonable action to protect from violence persons exercising their constitutional rights. [Citations omitted] And, in the absence of a speaker's exhortation to violence, in carefully defined circumstances, 'state officials are not entitled to rely on community hostility as an excuse not to protect, by inaction or affirmative conduct, the exercise of fundamental rights.'" *Glasson v. City of Louisville*, 518 F.2d 899, 906 (6th Cir. 1975), cert. denied, 423 U.S. 930, 96 S.Ct. 280, 46

L.Ed.2d 258 (1976); citing *Smith v. Ross*, 482 F.2d 33, 37 (6th Cir. 1973).

■ As the court in *Glasson* pointed out, the police officers may defend on the grounds that their conduct was objectively reasonable and was undertaken in good faith, considering all the facts and circumstances. *Id.* at 909–910; *Foster v. Zeeko*, 540 F.2d 1310, 1314 (7th Cir. 1976); *Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975); *Pierson v. Ray*, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). But for present purposes, it is clear that plaintiffs' allegations are actionable despite the fact that the court may ultimately conduct a detailed inquiry into the reasonableness of the police conduct on July 17, 1976.

## II. *Issue Preclusion*

Next, defendants claim that plaintiffs are barred from bringing this action because all issues are decided against them by Judge Grady in the contempt hearing in *King I*. Defendants' attempt to foreclose this action under the doctrine of issue preclusion is misplaced.

■ Simply stated, defendants rely on the principle that "any fact, question or matter in issue and directly adjudicated or necessarily involved a determination of an action before a court of competent jurisdiction in which a judgment or decree is rendered on the merits, is conclusively settled by the judgment therein and cannot be relitigated in any future action between the parties or privies." *Palma v. Powers*, 295 F.Supp. 924, 933 (N.D.Ill. 1969). The doctrine of issue preclusion or collateral estoppel preserves judicial economy by preventing relitigation of the same issue and deters the possibility of conflicting judgments on the same issue.[2] Because issue preclusion deprives the precluded party from fully presenting his case in its present context, certain requirements must be met which

---

2. Issue preclusion must be distinguished from claim preclusion, or res judicata, the principle that a claim which has been conclusively determined by a final judgment on the merits bars the parties from litigating anew that claim. The term "res judicata" is also used generically to cover all the various ways in which a judgment in one action will have a binding effect in another. *F. James Jr., Civil Procedure* 549 (1965). Whatever the label used, the concept of claim preclusion is inapplicable here because *King I* and *King III* do not involve the same claim, demand or cause of action.

assure that the issue has indeed been previously adjudicated.

Plaintiffs seize upon the requirement that the initial judgment must be final before it is given conclusive effect. *Restatement of Judgments* § 41 (1942).[3] Plaintiffs assert that Judge Grady's order was interlocutory and did not determine the rights of the parties in a conclusive and definitive manner.

■ Plaintiffs correctly assert that a final judgment is essential before an entire claim, demand, or cause of action is extinguished. If the judgment is final, the parties are forever barred from relitigating not only issues actually litigated, but also all issues which could have been litigated. *Lawlor v. National Screen Service Co.*, 349 U.S. 322, 326, 75 S.Ct. 865, 99 L.Ed. 1122 (1955); *Cromwell v. County of Sac*, 94 U.S. 351, 352–53, 24 L.Ed. 195 (1876). Courts are understandably reluctant to erect this barrier unless the judgment is final.

■ The need for a final judgment is not as compelling, however, when the question is whether the determination of a single issue actually decided in the first action should be given conclusive effect in a later action between the parties on a different claim. *See Zdanok v. Glidden Co.*, 327 F.2d 944, 955 (2d Cir. 1964); *Lummus Co. v. Commonwealth Oil Refining Co.*, 297 F.2d 80, 89 (2d Cir. 1961). If the doctrine of issue preclusion is applicable, the first judgment only estops issues actually litigated. *Irving National Bank v. Law*, 10 F.2d 721, 724 (2d Cir. 1926); *Cromwell v. County of Sac*, 94 U.S. 351, 24 L.Ed. 195 (1876).

Frequently, cases present many independent issues for decision. Individual issues may be conclusively determined by rulings on motions, resulting in interlocutory orders which are firm although the lawsuit has not yet proceeded to final judgment. Denying such orders' conclusive effect in a subsequent lawsuit on a different claim may cause hardship to a party forced to relitigate an issue previously decided in his favor

in the prior action which drags on due to other, nonrelated issues in dispute. Consequently, the drafters of the *Restatement of Judgments (Second)* have determined that the doctrine of issue preclusion is applicable even though the first lawsuit has not been concluded by a final judgment, so long as the decision on the particular issue is firm. *Restatement of Judgments (Second)* § 41, comment g (Ten. Draft No. 1, 1973). It is suggested that a nonfinal decision may be carried over if it was "adequately deliberated and firm" and that the factors to be considered are whether the "parties were fully heard, that the court supported its decision with a reasoned opinion, that the decision was subject to appeal." We conclude that the requirement for a final judgment has been substantially eroded with respect to issue preclusion.

Nevertheless, it is unnecessary in the instant case to engage in an extensive analysis of Judge Grady's order to decide whether it is sufficiently "final" to be conclusive, because even assuming that it was final, we perceive many other reasons why that decision does not preclude plaintiffs from bringing this action.

■ First, neither the issues nor the parties in *King I* and *King III* are identical, although there is substantial overlap in the two actions. The issues in the contempt hearing were framed by plaintiffs' Amended Motion for a Rule to Show Cause, and this motion listed several acts and omissions which allegedly violated the injunction of July 12. In their complaint in *King III*, plaintiffs alleged additional acts and omissions not previously mentioned. For example, the complaint here alleges that the police officers failed or refused to provide emergency medical assistance, that they failed to properly supervise and control the individual police officers, and that they failed to call in adequate reinforcements. Additionally, the issue in the contempt hearing was whether defendants wilfully violated the order to provide adequate protection to the marchers. Transcript at 239.

---

**3.** Section 41, Requirement of Finality, provides that "The rules of res judicata are not applicable where the judgment is not a final judgment." *See Premier Electrical Construction*

*Co. v. Miller-Davis*, 422 F.2d 1132, 1138–39 (7th Cir. 1970); *Covey v. American Distilling Co.*, 132 F.2d 453, 456 (7th Cir. 1943).

In the instant case, wilfulness is not an element of the plaintiffs' *prima facie* case, although defendants' good faith may be raised as a defense. Finally, the question in *King I* was whether the defendants should be held in contempt of a court order while the issue in *King III* is whether the defendants must respond to the plaintiffs in damages for their actions.

Second, in this action there are additional plaintiffs and additional defendants than were parties in *King I*. This action is brought on behalf of a class of all who participated in the march.[4] Most of the participants were not before the court in the contempt hearing, and it would be unfair to conclude the then absent plaintiffs' rights on the basis of a hearing in which they had no chance to participate. Moreover, the individual police officers who are defendants here were not defendants in *King I*. Indeed, the alleged contemnors in *King I* were the only the City Superintendent Rochford and Commander Rice. It is possible that some of the present defendant officers individually committed illegal acts or omissions during the march without Commander Pepp's knowledge. Commander Pepp was the only police official who testified at the contempt hearing. Plaintiffs should not be foreclosed from pursuing this theory of recovery on the basis of a hearing in which they had no opportunity to examine individual police officers.

▆▆▆▆ In addition to the differences in the issues and the parties, the difference in the plaintiffs' burden of proof in the two proceedings leads to the conclusion that the decision in the contempt hearing does not bar this action. Accepting plaintiffs' characterization of the proceeding in *King I* as one for civil contempt, the court must be persuaded by "clear and convincing" evidence that there was a violation of an injunction. *Shakman v. Democratic Organization of Cook County*, 533 F.2d 344, 351 (7th Cir. 1976); *United States v. Greyhound Corp.*, 363 F.Supp. 525, 570 (N.D.Ill. 1973), *supplemented*, 370 F.Supp. 881 (N.D.Ill. 1974), *aff'd*, 508 F.2d 529 (7th Cir. 1974).[5] The degree of proof required is greater than the preponderance of the evidence, the standard which normally obtains in a civil action such as this. Therefore, plaintiffs' failure to meet the heavier burden of proof in the contempt proceeding should be inconclusive in this later case, even assuming that the same issue is involved, where the burden of proof is lighter. *See Restatement of Judgments (Second)* § 68.1(d) (Tent. Draft No. 3, 1976) (Appendix).[6]

The fourth factor, which is of greater significance here than the difference in the burdens of proof, is whether the plaintiffs were afforded a full opportunity at the contempt hearing in *King I* to litigate the issues now pending in this action. "When the party against whom the prior judgment is asserted did not have a full and fair opportunity to litigate the issue in the first action or . . . other circumstances justify affording him an opportunity to relitigate the issue, relitigation will ordinarily be permitted." *Outboard Marine Corp. v. Liberty Mutual Ins. Co.*, 536 F.2d 730, 735 (7th Cir. 1976), *quoting Restatement of*

---

**4.** To date plaintiffs have not sought class certification.

**5.** In a criminal contempt proceeding, the evidence must show beyond a reasonable doubt that the violation of the injunction was wilful. *United States v. Greyhound Corp.*, 508 F.2d 529, 533 (7th Cir. 1974). Since Judge Grady framed the issue as whether the police wilfully violated the order of July 12, it may be that he viewed plaintiffs' motion as for a rule to show cause why defendants should not be held in criminal contempt. Wilfulness is not an element of a civil contempt. *United States v. Greyhound Corp.*, 363 F.Supp. 525, 570 (N.D.Ill. 1973). The true distinction between civil and criminal contempt, however, is whether the purpose is to compensate the injured party for loss sustained by the violation, or whether it is to vindicate the authority of the court. *Shakman v. Democratic Organization of Cook County*, 533 F.2d 344, 349 (7th Cir. 1976), *quoting Gompers v. Bucks Stove and Range Company*, 221 U.S. 418, 441, 31 S.Ct. 492, 55 L.Ed. 797 (1911). The record does not indicate what the purpose of plaintiffs' motion was in light of this distinction.

**6.** As a practical matter, however, we are unable to rely on the difference in the burdens of proof with any degree of confidence in view of Judge Grady's conclusion that there was "no evidence" to support plaintiffs' position in the contempt hearing. Transcript at 240.

*Judgments (Second)* § 88 and comments and Reporter's Note (Tent. Draft No. 3, 1976). With regard to the thoroughness of the contempt hearing, it is true that evidence was heard from several participants in the march and from Commander Pepp, who described the plan used to protect the marchers. It is true that all witnesses were subject to cross-examination and many were cross-examined at length. The procedures were undoubtedly sufficient to determine whether the defendants were guilty of contempt of court. Yet all parties understood that the purpose of the hearing was a limited one. Plaintiffs requested discovery of defendants' witnesses, documents, and photographs, but Judge Grady denied the requests because he found discovery unnecessary in determining the narrow question of whether the defendants in *King I* wilfully violated the order of July 12. Indeed, Judge Grady noted,

> This is not a normal lawsuit between the parties. This is a petition brought before the Court for the Court to determine whether its order has been violated. I do not need the typical discovery that occurs in a usual civil case in order to make what I regard as a complete investigation of the facts here. *Transcript of Proceedings* at 195.

Finally, if we were to hold that the plaintiffs were collaterally estopped in here by the non-contempt decision in *King I*, that ruling would deprive plaintiffs of their right to a jury trial. It is well settled that if the punishment for a criminal contempt exceeds six months, the contemnor is entitled to a trial by jury. *Codispoti v. Pennsylvania*, 418 U.S. 506, 512, 94 S.Ct. 2687, 41 L.Ed.2d 912 (1974); *Frank v. United States*, 395 U.S. 147, 89 S.Ct. 1503, 23 L.Ed.2d 162 (1969); *United States v. Pruitt*, 553 F.2d 1082 (7th Cir. 1977). In *King I* no term of imprisonment was contemplated or imposed. Plaintiffs did not demand a jury trial and did not have a right to a jury trial. They have demanded a jury trial in this action.

For the foregoing reasons, we reject defendants' contention that this action is barred by the decision in the contempt hearing in *King I* under the doctrine of issue preclusion.

### III. *Liability of Individual Defendants*

 Several individual defendants claim that they should be dismissed for various reasons. Defendant Mayor claims that he must be dismissed because the complaint does not allege that he directly, by affirmative conduct, participated in any of the acts or omissions alleged. Defendant correctly asserts that supervisory officials are not liable for civil rights violations under a theory of *respondeat superior*. *Hampton v. City of Chicago*, 484 F.2d 602, 610 (7th Cir. 1973). The complaint, however, does allege that all defendants knowingly and intentionally engaged in affirmative acts and omissions, and therefore it survives a motion to dismiss. Although the precise involvement of each defendant is not clear from the complaint, the parties may clarify the issues through discovery. *See, e.g., Doe v. Swinson*, 45 U.S.L.W. 2304 (E.D.Va. Nov. 24, 1976). We cannot determine at this time, of course, whether plaintiffs will ultimately prevail against any of the defendants, or whether any of the defendants will be able to show their non-involvement in a properly supported motion for summary judgment.

 Defendant Pepp claims that he had no duty to arrest members of the crowd who were throwing missiles at the plaintiffs, asserting that the decision of dispatching police officers or requiring them to remain with the marchers was a matter of police discretion. As discussed above, however, police officers do have a duty to take reasonable steps to protect persons exercising their First Amendment rights. Whether or not Commander Pepp's instructions were reasonable is a matter that cannot be decided on the face of the complaint.

### IV. *Municipal Liability under Respondeat Superior*

Defendant City of Chicago claims that it may not be sued for damages under a theory of *respondeat superior* for violations of the Fourteenth Amendment perpetrated by its employees and agents. Concededly it is not answerable under 42 U.S.C. § 1983.

*Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); *City of Kenosha v. Bruno,* 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973). We have held, however, that a municipality may be vicariously liable for the unconstitutional acts of its employees. *Anderson v. Woodlock,* 435 F.Supp. 1229 (N.D.Ill. 1977); *Williams v. Brown,* 398 F.Supp. 155 (N.D.Ill. 1975). Subject matter jurisdiction for such actions is present under § 1331 if the jurisdictional amount is met. *Hostrop v. Bd. of Jr. College Dist. No. 515,* 523 F.2d 569, 577 (7th Cir. 1975). In *Williams,* we based plaintiff's right of recovery on the theory of *Bivens v. Six Unknown Named Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), decisions of other lower courts, and a number of policy reasons which we concluded supported a theory of vicarious liability.

Since the filing of the briefs on the pending motion, the Court of Appeals for this circuit has refused to hold a municipal corporation (Cook County, Illinois) liable in money damages on a theory of *respondeat superior* for the unconstitutional conduct of its agent, absent a policy of the municipal corporation which required the conduct. *McDonald v. State of Illinois et al.,* 557 F.2d 596, decided June 15, 1977. Distinguishing its own decision in *Hostrop, supra,* the court said:

> We are not aware of any decision which holds a local government entity liable in money damages for the constitutional deprivations committed by its agents, independently of any official policy. . . .
>
> \* \* \* \* \* \*
>
> . . . We consider that the implication of a federal judicial remedy to the extent which would be necessary to impose liability on Cook County here would be out of harmony with the doctrine built up under § 1983, a drastic extension of the decided cases, and we are not persuaded of the existence of sufficient need.

557 F.2d p. 604.

For the reasons which we stated in *Williams v. Brown, supra,* we respectfully differ with the Court of Appeals. *Accord:*

*Wiley v. Memphis Police Dept.,* 548 F.2d 1247, 1254 (6th Cir. 1977); *Amen v. City of Dearborn,* 532 F.2d 554, 559 (6th Cir. 1976); *Reeves v. City of Jackson, Miss.,* 532 F.2d 491, 495 (5th Cir. 1976); *Skehan v. Board of Trustees of Bloomsburg State College,* 501 F.2d 31, 44 (3d Cir. 1974), *vacated on other grounds,* 421 U.S. 983, 95 S.Ct. 1986, 44 L.Ed.2d 474 (1975); *Cox v. Stanton,* 529 F.2d 47, 50 (4th Cir. 1975); *Roane v. Callisburg Independent School District,* 511 F.2d 633, 635 n. 1 (5th Cir. 1975); *Hanna v. Drobnick,* 514 F.2d 393, 398 (6th Cir. 1975); *Gray Union County Intermediate Educational District,* 520 F.2d 803, 805 (9th Cir. 1975); *Owen v. City of Independence, Mo.,* 421 F.Supp. 1110, 1119, 1123 (W.D.Mo. 1976); *Tucker v. Thompson,* 421 F.Supp. 297, 299–300 (M.D.Ga. 1976); *Sixth Camden Corp. v. Evesham Twp., Burlington City,* 420 F.Supp. 709, 715–17, 727–30 (D.N.J. 1976); *Behan v. City of Dover,* 419 F.Supp. 562, 564 n. 2 (D.Del. 1976); *Mejia v. School City of Gary,* 415 F.Supp. 370, 371 (N.D.Ind. 1976); *Clark v. State of Illinois,* 415 F.Supp. 149 (N.D.Ill. 1976); *Shifrin v. Wilson,* 412 F.Supp. 1282, 1305, 1306–08 (D.D.C. 1976); *Collum v. Yurkovich,* 409 F.Supp. 557 (N.D.Ill. 1975); *Panzarella v. Boyle,* 406 F.Supp. 787, 791–95 n. 7, 795–96 (D.R.I. 1975); *Redding v. Medica,* 402 F.Supp. 1260 (W.D.Pa. 1975); *Tatum v. Morton,* 402 F.Supp. 719, 725 (D.D.C. 1974); *Wright v. Houston Ind. School District,* 393 F.Supp. 1149, 1152 (S.D. Tex. 1975); *Patterson v. City of Chester,* 389 F.Supp. 1093, 1096 (E.D.Pa. 1975); *Maybanks v. Ingraham,* 378 F.Supp. 913, 915–16 (E.D.Pa. 1974); *Waltenberg v. New York City Department of Corrections,* 376 F.Supp. 41 (S.D.N.Y. 1974); *Dahl v. City of Palo Alto,* 372 F.Supp. 647 (N.D.Cal. 1974). *Contra: Raffety v. Prince George's County,* 423 F.Supp. 1045 (D.Md. 1976); *Bunting v. City of Columbia,* 423 F.Supp. 446 (D.S.C. 1976); *Livingood v. Townsend,* 422 F.Supp. 24 (D.Minn. 1976); *Farnsworth v. Orem City,* 421 F.Supp. 830 (D.Utah 1976); *Pitrone v. Mercadante,* 420 F.Supp. 1384 (E.D.Pa. 1976); *Weiss v. J. C. Penney Co., Inc.,* 414 F.Supp. 52 (N.D.Ill. 1976); *Gresham v. City of Chicago,* 405 F.Supp. 410 (N.D.Ill. 1975); *Perry v. Linke,* 394 F.Supp. 323 (N.D.Ohio 1974); *Jamison v. McCurrie,*

388 F.Supp. 990 (N.D.Ill. 1975); *Smetanka v. Borough of Ambridge*, 378 F.Supp. 1366 (W.D.Pa. 1974); *Perzanowski v. Salvio*, 369 F.Supp. 223, 228–31 (D.Conn. 1974).

Nevertheless, we are bound to follow *McDonald.* There is no principled basis to distinguish its holding that local governmental bodies are not liable for the unconstitutional acts of their officers and employees under a theory of *respondeat superior.* Plaintiffs allege no theory of recovery against the City of Chicago other than *respondeat superior.* Therefore, the motion of the City of Chicago to dismiss must be granted.

For the foregoing reasons, defendant City of Chicago's motion to dismiss is granted. In all other respects, defendants' motion to dismiss is denied. Plaintiffs are ordered to submit an appropriate motion for class certification pursuant to Rule 23(b)(3). Since plaintiffs do not seek declaratory or injunctive relief in this action, certification of a Rule 23(b)(2) class would be improper. Defendants are ordered to answer the complaint within 20 days. Cause set for status on Friday, September 23, 1977.