820 F.2d 916
 Harold SMITH, Plaintiff-Appellant,
v.
CITY OF CHICAGO, an Illinois Municipal Corporation, Edward
A. Quigley, formerly Commissioner, Department of Sewers,
City of Chicago, Miles McDarrah, Superintendent of Repairs,
Department of Sewers, City of Chicago, and Freddie Jones,
formerly District Foreman, 4th District, Department of
Sewers, City of Chicago, Defendants-Appellees.
 No. 86-1744.
 United States Court of Appeals,
Seventh Circuit.
 Argued Oct. 21, 1986.
Decided June 10, 1987.
 
 1
 Stephen J. Senderowitz, Stone, McGuire & Benjamin, Chicago, Ill., for plaintiff-appellant.
 
 
 2
 Jennifer A. Keller, Office of Corp. Counsel, Chicago, Ill., for defendants-appellees.
 
 
 3
 Before POSNER and FLAUM, Circuit Judges, and GRANT, Senior District Judge.*
 
 
 4
 GRANT, Senior District Judge.
 
 
 5
 Harold Smith held a number of positions in his ten years of employment with the City of Chicago. He alleges that in November 1982, soon after he performed volunteer work for one mayoral candidate, he was demoted from bricklayer to laborer. Smith contends he was informed by defendants Jones and McDarrah that he was demoted for working against then-Mayor Jane Byrne. Nearly two years later, on June 29, 1984, he was discharged. In August 1984, he filed a petition under Shakman v. The Democratic Organization of Cook County, et al., 69 C 2145 (N.D.Ill.1972)--the consent decree controlling the City of Chicago's use of political patronage in employment matters--seeking reinstatement and damages. He argued that had he not been demoted for political reasons his seniority would have been intact, and he never would have been discharged.
 
 
 6
 Judge Bua granted the defendants' motion for dismissal based upon the doctrine of laches. A motion to reconsider was also denied. On appeal in Smith v. City of Chicago, 769 F.2d 408 (7th Cir.1985), aff'g, 591 F.Supp. 635 (N.D.Ill.1984), this Court affirmed, finding that since the Shakman petition was filed twenty-one months after the plaintiff's politically-motivated demotion the statute of limitations would bar the petition. (This Court applied the 180-day limitations period of Title VII to Shakman contempt proceedings.)
 
 
 7
 The district court then denied Smith leave to amend his petition to include a count alleging violation of 42 U.S.C. Sec. 1983. Thus, Smith filed this Sec. 1983 action, characterizing his complaint as an amended pleading under Fed.R.Civ.P. 15(a) and (c), and viewing it to relate back to the date the original Shakman petition was filed. Judge Marshall granted defendants' motion to dismiss on grounds of res judicata. A motion to reconsider was denied, and Smith now appeals. We affirm the judgment of the district court to bar Smith's Sec. 1983 suit on grounds of res judicata.
 
 
 8
 * Res judicata is designed to ensure the finality of judicial decisions, Brown v. Felsen, 442 U.S. 127, 131, 99 S.Ct. 2205, 2209, 60 L.Ed.2d 767 (1979); a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action. Federated Department Stores, Inc. v. Moitie, 452 U.S. 394, 398, 101 S.Ct. 2424, 2427, 69 L.Ed.2d 103 (1981). Res judicata is considered a rule of "fundamental and substantial justice," Hart Steel Co. v. Railroad Supply Co., 244 U.S. 294, 299, 37 S.Ct. 506, 507, 61 L.Ed. 1148 (1917), because it "encourages reliance on judicial decisions, bars vexatious litigation, and frees the courts to resolve other disputes." Brown, 442 U.S. at 131, 99 S.Ct. at 2209.
 
 
 9
 The essential elements of res judicata are (1) a final judgment on the merits in an earlier action, (2) an identity of the cause of action in both the earlier and later suit, and (3) an identity of parties or privies in the two suits. Lee v. City of Peoria, 685 F.2d 196, 199 (7th Cir.1982). Once a litigant satisfies the prongs of the test, a later suit should be barred since there is little, if any, room left for making further policy arguments. Moitie, 452 U.S. at 401, 101 S.Ct. at 2429. The third element is uncontested--the parties are the same in both suits--but whether the remaining elements are also satisfied is disputed on this appeal.
 
 
 10
 Smith argues that his Sec. 1983 suit is not the same "cause of action" as his earlier Shakman petition and, therefore, should not be barred by res judicata. Smith contends the elements of a Sec. 1983 action differ from an equitable Shakman action. A Sec. 1983 suit requires showing a deprivation of a federal constitutional or statutory right under color of state law, whereas a Shakman claim requires proof of employment discrimination on the basis of political patronage. Suits under Sec. 1983 typically seek money damages and may be tried before a jury. Proceedings under Shakman, on the other hand, are equitable, usually seek immediate injunctive relief and confer no right to a jury trial. Furthermore, Smith argues, a preponderance of evidence standard applies in a Sec. 1983 suit, while a clear and convincing evidence standard applies in a Shakman proceeding. Therefore, Smith contends, his Sec. 1983 claim is much different from the earlier Shakman petition and is unsuited for res judicata treatment.
 
 
 11
 Smith's argument misses the mark, however, because it ignores what is crucial--"a single core of operative facts" forms the basis of both lawsuits he has filed. Car Carriers, Inc. v. Ford Motor Co., 789 F.2d 589, 593 (7th Cir.1986); Alexander v. Chicago Park District, 773 F.2d 850, 854 (7th Cir.1985), cert. denied, --- U.S. ----, 106 S.Ct. 1492, 89 L.Ed.2d 894 (1986). The November 1982 demotion is the factual basis for both the Shakman and Sec. 1983 suits. The Sec. 1983 complaint itself states "the initial complaint arises out of the same conduct, transaction and occurrence set forth in plaintiff's Shakman complaint filed on August 17, 1984. Only the legal theory of recovery has changed." Complaint p 2. We have regarded as the law of this Circuit that "[e]ven though one group of facts may give rise to different claims for relief upon different theories of recovery, there remains a single cause of action." Lee, 685 F.2d at 200. "Once a transaction has caused injury, all claims arising from that transaction must be brought in one suit or be lost." Car Carriers, 789 F.2d at 593.
 
 
 12
 Smith also argues that his Shakman claim was not decided "on the merits." Curiously, in discussing "on the merits," Smith suggests it makes a difference that, although his Shakman petition was not timely filed, his proposed "amended complaint" was filed within the statute of limitations on Sec. 1983 actions when considered in light of the relation back concept of Fed.R.Civ.P. 15(c). We agree with the district court when it stated "[w]e fail to comprehend how the availability of a longer statute of limitations asserted in a second lawsuit can affect the preclusive effect of an earlier judgment." Mem.Op. at 4. Smith's more intelligible argument is that this Court's decision in the first appeal referred to laches only in dicta, was concerned primarily with establishing a statute of limitations for Shakman contempt petitions and, therefore, was not a decision "on the merits." Smith notes the panel decision contained no laches analysis of whether delay in bringing suit was unreasonable or inexcusable, or whether the defendants were prejudiced by the delay.
 
 
 13
 As a preliminary matter, we cannot help but find that Smith mischaracterizes our holding in the first appeal as one not involving laches and therefore not decided on the merits. A laches determination rests within the sound discretion of the district court and will not be disturbed on appeal unless it is "so clearly wrong as to amount to an abuse of discretion." Lingenfelter v. Keystone Consolidated Industries, Inc., 691 F.2d 339, 341 (7th Cir.1982). In Smith's first appeal, we held that, in light of the appropriate limitations period, it was not an abuse of discretion for the district court to dismiss Smith's Shakman claim on grounds of laches. In any event, it is not clear how Smith's laches-limitations distinction works in his favor. "Dismissals based on laches or the running of a statute of limitations preclude a second action based on the same claim brought in the same system of courts." Cannon v. Loyola University of Chicago, 609 F.Supp. 1010, 1016 (N.D.Ill.1985), aff'd, 784 F.2d 777 (7th Cir.1986). ("Several federal decisions follow the clearly correct rule that dismissal of a prior action as barred by the statute of limitations precludes a second action on the same claim in the same system of courts." Wright, Miller & Cooper, 18 Federal Practice and Procedure Sec. 4441 at 366 (1981).)
 
 
 14
 Our decision in Cannon v. Loyola University of Chicago, 784 F.2d 777 (7th Cir.1986), cert. denied, --- U.S. ----, 107 S.Ct. 880, 93 L.Ed.2d 834 (1987), controls resolution of the "on the merits" issue presented by this appeal. Each of seven Chicago-area medical schools denied Mrs. Cannon's application for admission. She brought suits alleging age and sex discrimination, among other things, but the district court dismissed the several allegations on various grounds. In pertinent part we held that disposition of Mrs. Cannon's claims on grounds of laches was a judgment on the merits. 784 F.2d at 781. We deferred to the precedent of McCrocklin v. Fowler, 411 F.2d 580 (7th Cir.1969), which held that a suit was barred by res judicata because of an earlier Court of Claims grant of summary judgment on grounds of statute of limitations and laches. See 285 F.Supp. 41 (E.D.Wis.1968). In McCrocklin, we adopted the opinion of the district court, Judge Gordon presiding. That opinion expressly stated that the Court of Claims decision on grounds of statute of limitations and laches was a decision "on the merits." Id. at 43. We conclude Smith's Shakman petition was decided on the merits and, as a result, the technical elements for applying res judicata are fully met.
 
 II
 
 15
 The upshot of what we have said thus far is clear: Smith must present some justification for not applying res judicata to bar this suit although the prerequisites for applying it are fully satisfied. This should not be a simple task, given the Supreme Court's warning against injecting further policy into the res judicata calculation once its elements are satisfied. Moitie, 452 U.S. at 401, 101 S.Ct. at 2429. But so-called "exceptions" to res judicata have been recognized, however rarely. In Patzer v. Board of Regents of Univ. of Wisconsin System, 763 F.2d 851 (7th Cir.1985), for example, this Court recognized an exception to res judicata to allow a Title VII action for supplementary remedies despite the apparent bar of a prior state court judgment. This exception, however, developed only as a result of applying Wisconsin law which does not have an ironclad res judicata rule. Mandarino v. Pollard, 718 F.2d 845, 848 (7th Cir.1983), cert. denied, 469 U.S. 830, 105 S.Ct. 116, 83 L.Ed.2d 59 (1984), acknowledged the "rarely encountered exception" for declaratory judgments. This exception provides that a declaratory action determines only what it actually decides and therefore does not have a claim preclusive effect on other contentions that might have been advanced. See Rest.2d Judgments Sec. 33 comment c (1982). But the limited scope of this exception is obvious and Smith sought injunctive relief, not a declaratory judgment. Clearly, Smith could not fit an argument to either of these "exceptions" to res judicata.
 
 
 16
 Smith, nonetheless, contends he had good reasons for not filing suit immediately. Primarily, he feared retribution and thus considered it prudent not to sue while still on the payroll. He also claimed to have talked to his supervisor and to the Democratic Party's committeeman for his ward. Although we have already said these considerations do not toll a limitations period, Smith v. City of Chicago, 769 F.2d at 413, Smith insists it is unfair to apply res judicata when no Shakman limitations period existed at the time and the Sec. 1983 action could be considered timely filed in terms of its limitations period. The failure of this line of argument, however, lies in the fact that it is primarily directed toward explaining why Smith neglected to file a timely Shakman claim. It says little, if anything, about why he failed to include his Sec. 1983 claim. And if he is arguing that he delayed bringing the Sec. 1983 claim so he could pursue his Shakman claim, then that is precisely the conduct res judicata is designed to forbid.
 
 
 17
 Smith next relies on Dunlap v. City of Chicago, 435 F.Supp. 1295 (N.D.Ill.1977), wherein the district court held that a prior civil contempt proceeding will not be given issue-preclusive effect in a later Sec. 1983 action arising from the same core of operative facts. Smith contends the lesson of Dunlap is that because of the narrow purpose and different procedural standards of a civil contempt action it would be unfair to permit that action to bar a later Sec. 1983 claim, even though the later claim could have been brought at the same time as the civil contempt claim. In light of the public interest in not consolidating Shakman claims with Sec. 1983 claims, so as to expedite the proceedings, Smith urges the Court to resist applying res judicata. He argues he has not had a full and fair opportunity to litigate his claim.
 
 
 18
 Dunlap, however, is simply not a res judicata case; it involved issue preclusion, or collateral estoppel, which is applied to foreclose relitigation of an issue that has already been litigated and decided in the initial action. Res judicata, on the other hand, is applied to foreclose litigation of claims that were or could have been raised in an earlier suit. We therefore consider Dunlap irrelevant to our res judicata analysis.
 
 
 19
 Finally, Smith considers it important that claims under the Shakman consent decree are subject to a special dispute-resolution procedure to remedy decades of unconstitutional discrimination practiced against public employees. One of the principal objectives of that procedure is the availability of a speedy and inexpensive remedy. Smith argues that strong reasons of policy and fairness warrant honoring that expedited contractual mechanism by declining to encumber it with a separate Sec. 1983 action whenever the contractual mechanism is invoked.
 
 
 20
 This argument focuses on the procedure of the district court whereby Judge Bua handled all Shakman petitions for a period of nearly ten years. As a matter of practice and for reasons of efficiency, any non-Shakman claim accompanying the Shakman petition would be reassigned randomly to another judge of the district court. This procedure expedited the processing of hundreds of similarly-patterned cases. Smith argues he did not file his Sec. 1983 claim when he filed the Shakman petition because to do so would have precluded his benefiting from the expeditious enforcement proceedings.
 
 
 21
 We cannot agree with Smith's depiction of the district court's procedure for Shakman cases. Non-Shakman claims could accompany the Shakman suit and, indeed, many such suits were filed. Smith conceded as much in his discussion of the Dunlap case. Appellant Br. at 11. The other claims were merely reassigned to another judge of the court. The petitioner did not have to file a new lawsuit. Rather, the reassigned claim presumably retained the same case number as well as the initial filing date. Meanwhile, because of the reassignment, all Shakman cases benefited from the expedited proceedings. There is no merit to the argument that the district court was not equipped to afford relief for both Shakman and Sec. 1983 claims.
 
 
 22
 The fact remains that Smith neglected to raise a Sec. 1983 claim to contest his alleged politically-motivated demotion until years after it occurred, and not until an adverse judgment was rendered on his cause of action. This is a classic case for res judicata, and we have found no justification for not applying the doctrine. For the reasons set forth above, the judgment of the district court is AFFIRMED.
 
 
 
 *
 Honorable Robert A. Grant, Senior District Judge for the Northern District of Indiana, is sitting by designation