Mary L. WILLIAMS, Plaintiff,

v.

William W. BROWN, Defendants.

No. 74 C 3166.

United States District Court,
N. D. Illinois, E. D.

June 16, 1975.

Robert N. Schlesinger, St. Paul, Minn., Robert C. Howard, Chicago, Ill. for plaintiff.

Kenneth J. Cortesi, Asst. Corp. Counsel, Chicago, Ill., for defendants.

## MEMORANDUM OF DECISION

MARSHALL, District Judge.

Plaintiff, Mary L. Williams, alleges that defendants, William W. Brown and Michael L. Colon, in their capacity as police officers and agents of defendant, The City of Chicago, unlawfully arrested and confined her against her will, depriving her of rights guaranteed her by the Fourteenth Amendment to the Constitution of the United States. She seeks money damages from the defendent officers as well as the defendent, City of Chicago.

The City moved to dismiss the complaint against it on the ground that it is not a "person" under 42 U.S.C. § 1983. The motion was denied without opinion for the reason that the complaint against the City is based not on § 1983 but on the Fourteenth Amendment and 28 U.S.C. § 1331 and on state law.

The City then requested reconsideration of its motion, filing additional briefs in support of its contention that while a number of courts have upheld Fourteenth Amendment damage claims against municipalities "because of the actions of municipal employees in carrying out the functions of the municipality" "it doesn't seem" that the doctrine of respondeat superior exists under the Fourteenth Amendment.

■ *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), established that the Constitution itself gives a person deprived of his constitutionally guaranteed rights a cause of action in damages to redress that deprivation without regard to any statutorily created cause of action such as 42 U.S.C. § 1983. Such a cause of action "arises under the Constitution . . . of the United States", 28 U.S.C. § 1331, and is cognizable in federal court when more than $10,000 is in controversy. 403 U.S. at 398, 91 S.Ct. 2005 (Harlan, J., concurring).

In *Bivens* the Court held that the plaintiff's allegation that his Fourth Amendment right to be free from unreasonable searches and seizures was violated by the actions of federal narcotics agents who searched his apartment and arrested him without a search warrant or probable cause, "states a cause of action under the Fourth Amendment" and that Bivens was "entitled to recover money damages for any injuries he has suffered as a result of the agents' violation of the Amendment." 403 U.S. at 397, 91 S.Ct. at 2005.

■ In light of *Bivens,* plaintiff's allegations that she was deprived of her Fourteenth Amendment rights when police officers and agents of the City of Chicago unlawfully arrested and confined her clearly state a cause of action under the Fourteenth Amendment. The only question is whether she is entitled to recover money damages from the City for injuries she suffered because of the police officers' violations of the Amendment. I have concluded that she can.

■ This result is based on two propositions: first, that the theory of *Bivens* supplies relief in damages for violations of Fourteenth as well as Fourth Amendment rights; and second, that the cause of action created by *Bivens* runs against the City, which employed and empowered the police officers, as well as against the wrongdoing officers. These propositions, it seems to me, follow from the clear principles of *Bivens* and *Kenosha v. Bruno,* 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973) and from long recognized principles of federal jurisprudence.

In *Kenosha v. Bruno, supra,* the Supreme Court, relying on *Bivens,* held that municipalities can be held liable for violations of constitutional rights guaranteed by the Fourteenth Amendment. In *Bruno,* plaintiff brought an action under § 1983 and the Fourteenth Amendment against the City of Kenosha for injunctive relief from a violation of his Fourteenth Amendment rights. The Court first held, reaffirming *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), that a municipality cannot be sued under

§ 1983. The Court did not, however, hold that no federal cause of action could be maintained against the City, but rather remanded for verification of the jurisdictional amount, noting that the plaintiff had claimed jurisdiction under 28 U.S.C. § 1331 as well as under § 1343 and had claimed more than $10,000 in damages.

The three-judge district court in *Bruno* had said below, "were not civil rights jurisdiction proper, each of the plaintiffs herein would be able to assert the necessary amount in controversy requirement of Title 28 U.S.C. § 1331." But the majority of the Supreme Court declined to confirm jurisdiction over the action because the record did not clearly establish the required $10,000 in controversy: "Since . . . no stipulation as to the amount in controversy was filed, we cannot say on this state of the record whether or not jurisdiction was affirmatively established." 412 U.S. at 514, 93 S.Ct. at 2227.

In thus remanding the case for verification of jurisdictional amount, the clear implication of the majority opinion is that § 1331 jurisdiction is available when a claim against a municipality is made directly under the Fourteenth Amendment and $10,000 in controversy is established. Justice Brennan, in a concurrence joined by Justice Marshall, was explicit:

"If appellees can prove their allegation that at least $10,000 is in controversy, then § 1331 jurisdiction is avail-

able. *Bell v. Hood,* 327 U.S. 678 [66 S.Ct. 773, 90 L.Ed. 939] (1946); *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388 [91 S.Ct. 1999, 29 L.Ed. 2d 619] (1971)." 412 U.S. 516, 93 S. Ct. 2228 (1973).

Following *Bivens* and *Bruno,* I have held that there is a federal cause of action against a municipal corporation directly under the Fourteenth Amendment and that the action is cognizable under § 1331. *Robinson, et al. v. Conlisk, et al.,* 385 F.Supp. 529, 536 (N.D.Ill.1974). The Fifth Circuit agrees that *Bruno* recognizes that a claim can be maintained against a municipality directly under the Fourteenth Amendment and § 1331 in *United Farmworkers of Florida v. City of Delray Beach,* 493 F.2d 799, 802 (5th Cir. 1974).[1]

Given that the instant complaint states a violation of plaintiff's Fourteenth Amendment rights and that she has a cause of action against the municipality under the Fourteenth Amendment to vindicate those rights, does she have a remedy in damages?

". . . [I]t is . . . well settled that where legal rights have been invaded, and a federal statute provides a general right to sue for such invasion, federal courts may use any available remedy to make good the wrong done." *Bell v. Hood,* 327 U.S. 678, 684, 66 S.Ct. 773, 777, 90 L.Ed. 939 (1946).[2] There can be no question that the complaint adequately alleges a violation of plain-

1. The existence of a cause of action for injunctive relief directly under the Fourteenth Amendment has in fact been accepted without discussion. *Takahashi v. Fish and Game Com'n.,* 334 U.S. 410, 68 S.Ct. 1138, 92 L.Ed. 1478; *Loving v. Virginia,* 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010. Justice Harlan, concurring in *Bivens,* spoke of "the presumed availability of federal equitable relief against threatened invasions of constitutional interests." 403 U.S. at 404, 91 S.Ct. at 2008. It is only since *Bruno* and *Bivens,* however, that courts have regularly applied the Fourteenth Amendment cause of action to municipalities, and recognized the availability of relief in damages as the logical corollary to equitable relief.

2. In *Bell v. Hood* the Court held that the district court had § 1331 jurisdiction over an action brought against agents of the FBI directly under the Fourth and Fifth Amendments seeking damages in excess of the then jurisdictional amount, and remanded the case for a determination of whether the complaint stated a cause of action. The foregoing quote from *Bell* expressed the standard by which the determination was to be made. Twenty-five years later, the Court applied that standard itself in *Bivens, supra,* holding that a cause of action for damages based directly on the Fourth Amendment does exist.

tiff's rights; that 28 U.S.C. § 1331 gives a general right to sue; and that, as previously shown in this memorandum, there is a cause of action against a municipality directly under the Fourteenth Amendment to remedy violations of the Amendment by its agents.

In light of the unquestioned availability of injunctive relief, it can hardly be said that relief in damages cannot be awarded "to make good the wrong done" to plaintiffs. Justice Harlan made this clear in his concurrence in *Bivens*.

". . . the presumed availability of federal equitable relief against threatened invasions of constitutional interests appears entirely to negate the contention that the status of an interest as constitutionally protected divests federal courts of the power to grant damages absent express Congressional authorization.

\* \* \*

". . . [I]f a general grant of jurisdiction to the federal courts by Congress is thought to be adequate to empower a federal court to grant equitable relief for all areas of subject matter jurisdiction enumerated therein, see 28 U.S.C. § 1331(a), then it seems to me that the same statute is sufficient to empower a federal court to grant a traditional remedy at law."

*Bivens*, 403 U.S. at 404, 405, 91 S.Ct. at 2009.

Indeed, as Justice Harlan's remarks indicate, in light of the traditional notion that an injunction is an extraordinary remedy, to be granted only in exceptional circumstances, if any remedy were to be deemed unavailable without explicit Congressional authorization,

it would more appropriately be the injunction than damages, the traditional remedy at law. "Historically, damages have been regarded as the ordinary remedy for an invasion of personal interests in liberty. See . . . *Swafford v. Templeton*, 185 U.S. 487 [22 S. Ct. 783, 46 L.Ed. 1005] (1902); *Wiley v. Sinkler*, 179 U.S. 58 [21 S.Ct. 17, 45 L.Ed. 84]. (1900)." *Bivens, supra,* at 395–96, 91 S.Ct. at 2004.[3] In the present case damages are the obvious remedy. The kind of abuse of police authority alleged here was recognized in *Monroe v. Pape, supra,* as properly compensable in damages.

Since *Bivens* and *Bruno*,[4] a number of courts have found damages available in actions against municipalities or other state corporate entities directly under the Fourteenth Amendment for violations by their employees of the plaintiffs' constitutional rights.

In *Skehan v. Board of Trustees*, 501 F.2d 31 (3d Cir. 1974), the plaintiff challenged his discharge from the faculty of a state college for violation of his Fourteenth Amendment right to procedural due process and sought back pay. The action was brought both under § 1983, basing jurisdiction on 28 U.S.C. § 1343, and under the Fourteenth Amendment directly, basing jurisdiction on § 1331. The court expressed some doubt as to whether the college was a person for the purposes of § 1983, but said that "because the requisite jurisdictional amount of § 1331 is pleaded, the fact that the College is not a 'person' within the meaning of 42 U.S.C. § 1983 is not significant." 501 F.2d at 44.

*Maybanks v. Ingraham*, 378 F.Supp. 913 (E.D.Pa.1974) citing *Bivens, Bruno*

---

3. In both *Wiley v. Sinkler* and *Swafford v. Templeton*, the Court held that federal courts had jurisdiction to hear damage actions against state officials who denied plaintiffs the right to vote in federal elections where the complaint alleged the requisite amount in controversy.

4. Even before *Bivens* and *Bruno* a number of courts had held without discussion that a federal cause of action for damages against

a municipality exists directly under the Fourteenth Amendment for uncompensated taking through the use of eminent domain and zoning powers. *Foster v. Herley*, 330 F.2d 87 (6th Cir. 1964); *Sayre v. United States*, 282 F.Supp. 175 (N.D.Ohio 1967); *Sayre v. Cleveland*, 493 F. 64 (6th Cir. 1970); *Miller v. County of Los Angeles*, 341 F.2d 964 (9th Cir. 1965); *Klim v. Jones*, 315 F.Supp. 109 (N.D.Calif.1970).

and *Skehan,* held that the City of Philadelphia was subject to a damage action directly under the Fourteenth Amendment, with jurisdiction based on 28 U.S.C. § 1331, for the allegedly racially discriminatory discharge of an employee of the city department of public health. *Compare, Robinson, et al. v. Conlisk, et al., supra.*

In *Dahl v. City of Palo Alto,* 372 F. Supp. 647 (N.D.Calif.1974), the court, citing *Bivens,* held that a complaint which alleged that the City had, through a zoning change, taken plaintiff's property without just compensation in violation of her Fourteenth Amendment rights and which sought damages in excess of $10,000 stated a cause of action directly under the Fourteenth Amendment, cognizable in federal court under 28 U.S.C. § 1331.

Damage liability of a municipality for the unconstitutional acts of its employees is particularly appropriate in the area of police misconduct. Judges and commentators have asserted that, as a matter of public policy, municipalities should be liable for the torts of their police.

> "Those wronged are not wronged by the policeman alone or even chiefly . . .. It is the municipality which employs the policeman, because it knows of no other way to hold the forces of evil in check . . .. Thus it appears very unjust for a citizen, injured in such an encounter [with a policeman], to have to look for redress only to a patrolman who maybe cannot even be served with process . . . or is judgment proof." *Carter v. Carlson,* 144 U.S. App.D.C. 388, 447 F.2d 358, 374 (1971), Nichols, J., concurring; rev'd on other grounds, 409 U.S. 418, 93 S. Ct. 602, 34 L.Ed.2d 613 (1973).

> ". . . .[R]eason and the realities of life on the streets of our cities lead to the conclusion that a municipality should be held liable for the torts of its police officers where they act as they are alleged to have acted in the

instant case. 'It is, after all, the state which puts the officer in a position to employ force and which benefits from its use.' Jaffe, [Suits Against Governments and Officers: Damage Actions, 77 Harv.L.Rev. 209, 229 (1963)]." *Thomas v. Johnson,* 295 F.Supp. 1025 (D.D.C.1968).

Professor Kenneth Culp Davis has written:

> "For police abuses inflicted on those suspected of a crime . . . [t]he most promising way to correct the abuses . . . is to provide incentives to top officials, by imposing liability on the governmental unit." K. Davis, Administrative Law Treatise, 1970 Supplement, 864.

It is implicit in *Skehan, Maybanks* and *Dahl, supra,* that the exclusion of municipalities from § 1983, created in *Monroe v. Pape, supra,* relied on by the City of Chicago in its earlier motion to dismiss, arose solely from the legislative intent and history behind § 1983 and not from any broader, generalized immunity which could bar this cause of action against the City of Chicago.

Obviously the legislative intent which was determinative in *Monroe v. Pape* is irrelevant here. Plaintiff does not rely on § 1983 but brings her action directly under the Fourteenth Amendment, which is expressly directed toward the states. It would be irrational to hold a municipality immune from liability under the very part of the Constitution enacted to meet the perceived need for a federal means of limiting the abuse of individual rights by municipalities and other repositories of state power as they acted through their employees (which is, of course, the only way a municipality can act).

Section 1331, on which plaintiff bases jurisdiction of her action against the City, does not make damages against the City unavailable. The predecessor to § 1331, Act of March 3, 1875, ch. 137, § 1, 18 Stat. 470, was enacted to give the federal courts jurisdiction over all questions arising "under the Constitu-

tion, laws or treaties of the United States" which present the requisite amount in controversy. There is nothing in the language or legislative history of § 1331 to indicate that the restrictions of § 1983 should be imported into federal question jurisdiction. See discussion in *Dahl v. Palo Alto, supra,* at 649–51.

Of course the action is not barred by any sort of sovereign immunity enjoyed by the City of Chicago. It has long been settled that a municipality does not enjoy the immunity conferred on the states by the Eleventh Amendment. *Hopkins v. Clemson Agricultural College,* 221 U.S. 636, 31 S.Ct. 654, 55 L.Ed. 890 (1911); *N. M. Patterson and Sons, Ltd. v. City of Chicago,* 176 F.Supp. 323 (N.D.Ill.1959).

Nor is there any common law sovereign immunity available to the City in this case. It is not clear to what extent liability in an action brought directly under the Fourteenth Amendment is shaped by the common law of the state in which the action is brought and to what extent it is governed by a more general "federal common law." It is unnecessary to resolve that issue in this case, however, because under either body of law the City of Chicago is not shielded from liability by sovereign immunity. Under Illinois law, a municipality is liable even for the intentional torts of its police officers. *Arnolt v. City of Highland Park,* 52 Ill.2d 27, 31, 282 N.E.2d 144 (1971). In any event, the most obvious expression of "federal common law" is the law applied by the federal courts of the District of Columbia. In *Thomas v. Johnson,* 295 F.Supp. 1025 (D.D.C. 1968), an action against the District of Columbia for the intentional tort of one of its police officers, the court held:

"The District [of Columbia] is not shielded from suit in this case by the doctrine of governmental immunity. . . . It may . . . be sued on a theory of respondeat superior for the ministerial acts of its

employee officers in allegedly assaulting Plaintiff." 295 F.Supp at 1033. Similarly, *Carter v. Carlson,* 144 U.S. App.D.C. 388, 447 F.2d 258 (1971), *rev'd on other grounds,* 409 U.S. 418, 93 S.Ct. 602, 34 L.Ed.2d 613 (1973), an action arising out of police misconduct similar to that alleged in these cases, held:

"In the absence of legislation, we see no reason to incorporate [governmental] immunities into the law of the District. When a tort is made possible only through the abuse of power granted by the government, then the government should be held accountable for the abuse, whether it is negligent or intentional in character. Accordingly, we reject the suggestion that the District is immune from suit for the intentional torts of its employees." 447 F.2d at 366.

There is, then, nothing in the common or statutory law of Illinois or the United States, or in the United States Constitution, which immunizes the City of Chicago from its normal liability for the unconstitutional acts of the agents which it empowers to act as police officers.

As to the City's suggestion in its latest memorandum that the doctrine of respondeat superior "doesn't seem" to exist under the Fourteenth Amendment, that suggestion is clearly incorrect for the following reasons:

1. The City offers no authority for the suggestion, and the court has found none.

2. The holdings in *Skehan* and *Maybanks, supra,* necessarily subsume the theory of respondeat superior, since the actions complained of in those cases were the actions of employees. Indeed, a municipal entity can carry out executive branch functions only through its employees.

3. The authorities cited in the immediately preceding discussion of municipal immunity demonstrate that under

both Illinois law and "federal common law" applied by the federal courts in the District of Columbia, respondeat superior applies to render municipalities liable for the torts of their police officers.

4. The public policy arguments discussed earlier support the desirability of respondeat superior liability of municipalities for the torts of their police officers.

To recapitulate, plaintiff has a cause of action to redress the violation of her Fourteenth Amendment rights directly under that Amendment. This court has jurisdiction over that action under 28 U.S.C. § 1331. Damages from the City as the employer of the police officers are an available remedy and are not barred by any immunity of the City.

For the foregoing reasons the motion of defendant, City of Chicago, to reconsider its earlier motion to dismiss is denied.