Domingo Roque MOLINA,
Plaintiff-Appellant,

v.

Paul T. RICHARDSON and the City of
Los Angeles, Defendant-Appellee.

No. 76–2810.

United States Court of Appeals,
Ninth Circuit.

July 21, 1978.

Michael R. Mitchell (argued), Los Angeles, Cal., for plaintiff-appellant.

Michael K. Fox, Deputy City Atty. (argued), Los Angeles, Cal., for defendant-appellee.

Before WRIGHT and WALLACE, Circuit Judges, and GRANT,* District Judge.

WALLACE, Circuit Judge:

Molina appeals from the judgment of the district court dismissing his civil-rights claim against the City of Los Angeles for failure to state a claim upon which relief can be granted and denying him attorney's fees for his successful action against two

* Honorable Robert A. Grant, United States District Judge, Northern District of Indiana, sitting by designation.

policemen employed by the city. We affirm the dismissal of the claim against the city and vacate and remand the judgment with respect to the denial of attorney's fees.

## I. *The Facts*

On July 1, 1973, Molina was stopped by two policemen while driving his automobile in Los Angeles. The officers had noticed that the rear of Molina's car was damaged and that a current registration tab was not attached to the rear license plate. Molina complied with their request to produce the registration tab which he had inside the car, explaining that he intended to attach it to the license plate after the damage to his vehicle was repaired. The officers then asked to see his driver's license. Molina held up his wallet, displaying his license through a clear plastic container, but he refused to hand it over as directed. The parties disagree as to whether the officers then told Molina to get out of his car, but it is agreed that they eventually removed him by force and, after a struggle, handcuffed him and took him to the police station where he was booked for resisting arrest. The prosecutor later refused to file any charges against Molina.

Molina, claiming physical injuries resulted from the incident, commenced this action in the district court seeking compensatory and punitive damages for the alleged violation by the officers of his Fourth Amendment right to be free from arrest unless based upon probable cause, his guarantee under the Fifth and Fourteenth Amendments against deprivation of liberty without due process of law, and his right to be free from cruel and unusual punishment under the Eighth Amendment. He also asked for damages against the City of Los Angeles (the city), the officers' employer, under the principle of *respondeat superior.* The city successfully moved to dismiss the claim against it for failure to state a cause of action. The case against the officers proceeded to trial, and a jury awarded Molina $65.75 compensatory damages against each of them. The district judge entered judgment on the verdict, but denied Molina's petition for attorney's fees. Molina appeals from the dismissal of the city from the action and from the refusal to award him attorney's fees.

## II. *The Dismissal of the City*

The primary issue on appeal is whether the district judge properly dismissed the city from this action. Although his cause of action against the individual officers was based, in part, on 42 U.S.C. § 1983,[1] Molina conceded on appeal that this statute gives him no right of action against the city because of the holding in *Monroe v. Pape,* 365 U.S. 167, 187–92, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), that a municipality is not a "person" within the meaning of section 1983. In spite of the intervening decision in *Monell v. Department of Social Services,* —— U.S. ——, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), which overruled *Monroe* in part, this concession by Molina is still appropriate.

*Monell* disapproved of the broad holding in *Monroe* that "local governments are wholly immune from suit under § 1983," *id.* —— U.S. at ——, 98 S.Ct. at 2022 (footnote omitted), as inconsistent with the intent of Congress when it enacted that statute. But *Monell* reaffirmed *Monroe* to the extent it decided

> that a municipality cannot be held liable *solely* because it employs a tortfeasor— or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory.
>
> .    .    .    .    .
>
> .   .   . Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by

---

1. Section 1983 provides:

   Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

*Id.* at ——, ——, 98 S.Ct. at 2036, 2038 (emphasis in original).

Molina's complaint sought recovery against the city solely "by virtue of [the employment] relationship" between the city and the police officers. Although it is conceded that the officers were acting in their official capacities when they stopped Molina and questioned him, Molina did not argue before the district court that the allegedly *illegal* conduct of the officers "may fairly be said to represent [the city's] official policy." Thus, *Monell* does not give Molina a section 1983 cause of action against the city.

Molina asserts, however, that jurisdiction over the city exists under 28 U.S.C. § 1331,[2] the general "federal question" jurisdiction statute, and that a cause of action for vicarious liability against the city may be inferred directly from the text of the Fourteenth Amendment. We are thus called upon to decide a question on which the federal courts are divided: whether the decision in *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), should be extended to provide a cause of action for damages against a municipality for the violation of a citizen's constitutional rights by police officers.[3]

In *Bivens,* the plaintiff had been the victim of police misconduct not dissimilar to that alleged by Molina in this case. After

having been manacled, arrested, and taken into custody in violation of the Fourth Amendment, Bivens was released and no charges were brought against him. Neither section 1983 nor any other federal statute provided a remedy to Bivens, and rather than leave him to rely upon state tort remedies whose protection might not be co-extensive with that of the Fourth Amendment, the Court exercised its judicial power to infer a remedy directly from the text of the amendment itself.

Because the city is not vicariously liable under section 1983 for the alleged violation of Molina's Fourth, Fifth, Eighth, and Fourteenth Amendment rights, he would have us supply a substitute remedy by extending the *Bivens* doctrine to create such liability against the city directly under the Fourteenth Amendment.[4] We conclude that it would be inappropriate for us to do so.

## A. Jurisdiction

■ We are not in doubt about federal jurisdiction in this case. As early as 1946 the Supreme Court decided that federal question jurisdiction exists for claims urging a cause of action based directly on the Constitution. *Bell v. Hood,* 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946). As did the plaintiff in *Bell,* Molina seeks recovery "squarely on the ground" that specific constitutional guarantees have been violated. *Id.* at 681, 66 S.Ct. 773. The recent decision in *City of Kenosha v. Bruno,* 412 U.S. 507,

2. Section 1331 provides, in part:

The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States.

3. The lower federal court decisions and other sources cited hereafter were, of course, authored prior to *Monell v. Department of Social Services,* —— U.S. ——, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), which is discussed in the previous text. Despite the fact that they do not take account of *Monell,* however, we find their analyses helpful with respect to the question presented by this case, which *Monell* leaves untouched: whether the *Bivens* ration-

ale can supply the *respondeat superior* liability against a municipality that section 1983 does not provide.

4. The protections of the Fourth Amendment are effective against the states through the Fourteenth, *Mapp v. Ohio,* 367 U.S. 643, 655, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), as is the Eighth Amendment's guarantee against cruel and unusual punishment, *Gideon v. Wainwright,* 372 U.S. 335, 341–42, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); *Robinson v. California,* 370 U.S. 660, 667, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962). The Fifth Amendment's prohibition against deprivations of liberty without due process of law is, of course, repeated in the text of the Fourteenth Amendment itself.

93 S.Ct. 2222, 37 L.Ed.2d 109 (1973), suggests that the Supreme Court sees no obstacle to federal jurisdiction in *Bivens* actions against municipalities.[5]

The city contends that jurisdiction is lacking because the requisite $10,000 jurisdictional amount of section 1331 is not in controversy. We disagree. The test for determining whether the jurisdictional amount is in controversy is liberally tilted in favor of plaintiffs:

> [T]he sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal. The inability of plaintiff to recover an amount adequate to give the court jurisdiction does not show his bad faith or oust the jurisdiction.

*St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 288–89, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938) (footnotes omitted); *accord, Mt. Healthy City Bd. of Educ. v.*

*Doyle*, 429 U.S. 274, 276, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977).

The city argues that the small recovery against the officers demonstrates to a "legal certainty" that Molina could not have recovered $10,000 against their employer, since the city could not be liable for more than were its agents. But the city has not demonstrated or even alleged that when the trial began such a small recovery was inevitable, and it is "at the time of suit," *id.* at 277, 97 S.Ct. 568, that the determination of the amount in controversy is made. *See* 1 Moore's Fed.Practice ¶ 0.91[3], at 850–51.[6]

### B. The Cause of Action

■ While the federal court has jurisdiction, it is another matter whether Molina's complaint states a claim upon which relief can be granted. As *Bell* made clear, the existence of a cause of action is conceptually distinct from the presence of jurisdiction,[7] 327 U.S. at 682, 66 S.Ct. 773, and it is

---

**5.** In *Bruno*, decided prior to *Monell*, the Supreme Court followed *Monroe* by refusing to allow a section 1983 action seeking injunctive relief against a municipality. The Court remanded, however, for consideration of whether the $10,000 required by section 1331 was in controversy. 412 U.S. at 514, 93 S.Ct. 2222. From this it may be inferred that section 1331 jurisdiction—in the *Bell v. Hood* sense—would exist were the jurisdictional amount requirement satisfied. *See, e. g., Dahl v. City of Palo Alto*, 372 F.Supp. 647, 650 (N.D.Cal.1974). To the extent it relies on *Monroe's* total exclusion of municipalities from section 1983 liability, of course, *Bruno's* holding that injunctive relief against a city cannot be founded on section 1983 does not survive *Monell*. *Bruno's* significance for this case, however, lies in its implicit recognition that even if a municipality cannot be held liable for certain conduct under section 1983, federal question jurisdiction may nevertheless exist over a cause of action arising out of the same facts but based on some source other than section 1983. We find nothing in *Monell* that undermines that aspect of *Bruno*.

However, if the Supreme Court should ultimately decide that *Bivens*-type action for vicarious liability does not lie against municipalities, then the jurisdiction of a federal court over a case asserting such a cause of action might thereby be defeated since the claim could be said to be "wholly insubstantial and frivolous," *Bell v. Hood*, 327 U.S. 678, 682–83, 66 S.Ct. 773, 90 L.Ed. 939 (1946); *accord, Hagans v. Lavine*, 415 U.S. 528, 536–38, 94 S.Ct. 1372,

39 L.Ed.2d 577 (1974), and thus not to present a genuine question arising under the Constitution.

**6.** We do not approve of the fact that the city raises its jurisdictional amount argument for the first time on appeal. But since this issue goes to the subject matter jurisdiction of the court, we are constrained to address it.

**7.** Thus, cases holding that section 1331 jurisdiction exists for actions brought directly under the Constitution, *see City of Kenosha v. Bruno*, 412 U.S. 507, 514, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973); *Gray v. Union County Intermed. Educ. Dist.*, 520 F.2d 803, 805 (9th Cir. 1975); *Miller v. County of Los Angeles*, 341 F.2d 964, 966 (9th Cir. 1965), are not authority for the proposition that a cause of action must also be recognized. Molina and the American Civil Liberties Union as amicus curiae argue that *Bruno* suggests an implicit extension of the *Bivens* cause of action to municipalities. But in spite of Justice Brennan's concurrence in support of that proposition, 412 U.S. at 516, 93 S.Ct. 2222, the majority in *Bruno* did no more than imply that federal question jurisdiction might exist. See n.5 *supra*; Comment, *Implying a Damage Remedy Against Municipalities Directly Under the Fourteenth Amendment: Congressional Action as an Obstacle to Extension of the Bivens Doctrine*, 36 Md.L.Rev. 123, 151 (1976) [hereinafter referred to as *Congressional Action*].

to the question whether Molina has a cause of action against the city that we now turn.

1. *The extension of* Bivens *to municipalities is not constitutionally mandated.*

The first step in deciding whether Molina has a *Bivens* action against the city is to determine whether that result is constitutionally required. We conclude that it is not.

The majority in *Bivens* strongly implied that specific congressional action might have precluded the judicial creation of a damages remedy in that case. 403 U.S. at 397, 91 S.Ct. 1999. Such preclusion would not be permissible, of course, were the *Bivens* result a constitutional necessity. If the Constitution did not compel the result in *Bivens*, neither does it compel the extension of the doctrine of that case to municipalities. Even those who advocate that extension concede that this is so. *E. g.,* Note, *Damage Remedies Against Municipalities For Constitutional Violations,* 89 Harv.L. Rev. 922, 935–39 (1976).

Since we are not *required* to allow Molina his cause of action against the city, the question becomes whether we *should* do so. Specifically, the issue is whether the difference between this case and *Bivens* either precludes or counsels against the exercise of our judicial discretion to provide a damages remedy to redress any constitutional violation that may have been caused by the city.

2. *Prudential considerations as an obstacle to the extension of* Bivens *to municipalities.*

Two separate, though related, arguments have been advanced against the imposition of *Bivens* liability on municipalities. The first, relying on the implication in *Bivens* that congressional action might have precluded the result in that case, 403 U.S. at 397, 91 S.Ct. 1999, is that by enacting 42 U.S.C. § 1983 Congress has supplied the exclusive remedy for constitutional violations committed under color of state authority.[8] Thus, the argument goes, we

---

**8.** The basis for this view is the suggestion in *Bivens* that "affirmative action by Congress" might have dictated another result, 403 U.S. at 396, 91 S.Ct. 1999, especially if that action were read as a statement that victims of constitutional violations should "be remitted to another remedy, equally effective in the view of Congress." *Id.* at 397, 91 S.Ct. at 2005. The argument, developed without the benefit of *Monell's* narrowing of *Monroe*, is that section 1983 was a broad and sweeping legislative implementation of the Fourteenth Amendment, and that when Congress deliberately excluded municipalities from liability under this scheme, it, "[i]n one sense of the term, . . . preempted the field against judicial implication of such a remedy." *Perry v. Linke,* 394 F.Supp. 323, 326 (N.D.Ohio 1974). *Accord, Raffety v. Prince George's County,* 423 F.Supp. 1045, 1057–58 (D.Md.1976); *Pitrone v. Mercadante,* 420 F.Supp. 1384, 1388–91 (E.D.Pa.1976). Adherents of this view read such pre-*Monell* decisions of the Supreme Court as *Aldinger v. Howard,* 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976); *City of Kenosha v. Bruno,* 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973); *Moor v. County of Alameda,* 411 U.S. 693, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973), and *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), as confirming their conclusion that Congress has indeed clearly expressed its wish that municipalities be immune from civil rights actions. *Kostka v. Hogg,* 560 F.2d 37, 42–44 (1st Cir. 1977); *Pitrone v. Mercadante, supra,* 420 F.Supp. at 1389–90. They point out that the predecessor to section 1331 was enacted only a few years after section 1983, and they do not believe Congress intended to allow with the later statute what it had expressly declined to permit with the earlier. *See Smetanka v. Borough of Ambridge,* 378 F.Supp. 1366, 1378 (W.D.Pa.1974).

Those who take the opposite position have argued, also unaided by *Monell,* that the legislative history of section 1983 is entirely distinct from that of section 1331, and Congress' decision not to include municipalities within the scope of the former statute should not be read to create a general municipal immunity from actions to redress constitutional violations. They also point out that the $10,000 amount-in-controversy requirement of section 1331 would prevent *Bivens*-type actions jurisdictionally based on that section from totally circumventing the municipality exclusion of section 1983 which requires no minimum amount in controversy. *Brault v. Town of Milton,* 527 F.2d 730, 734–35 (2d Cir. 1975), *rev'd on other grounds, id.* at 736 (en banc); *Dahl v. City of Palo Alto, supra,* 372 F.Supp. at 650–51. *See also Williams v. Brown,* 398 F.Supp. 155, 159 (N.D.Ill. 1975). They contend that only if Congress clearly and explicitly so states should a statute implementing constitutional rights be read to exclude complementary judicial remedies, and that neither section 1983 nor Supreme Court

would be precluded from extending *Bivens* to municipalities. While we recognize the logic and persuasive reasoning of this position, we find it unnecessary to decide whether to adopt it because we believe the issue is more than adequately resolved by the second argument: that it would be an unwise use of judicial power to accede to the demanded extension. The Court in *Bivens* acknowledged that there might be "special factors counselling hesitation" when the courts infer a cause of action directly from the Constitution "in the absence of affirmative action by Congress."[9] 403 U.S. at 396, 91 S.Ct. at 2005. We find several such factors in this case.

a. *Respect for the proper role of Congress.*

What kept the *Bivens* dissenters from joining with the rest of the Court was also a major cautionary signal to both Mr. Justice Harlan and the majority. All recognized that the implementation of constitutional guarantees is primarily a legislative task, as contrasted with the interpretive responsibilities of the judiciary. *See* Comment, *Implying a Damage Remedy Against Municipalities Directly Under the Fourteenth Amendment: Congressional Action as an Obstacle to Extension of the* Bivens *Doctrine*, 36 Md.L.Rev. 123, 145–46 (1976) [hereinafter referred to as *Congressional Action*]. The majority in *Bivens*, however, found no legislative scheme implementing the Fourth Amendment by allowing recovery against federal officers for their consti-

tutional violations.[10] The Court thus found itself in a field into which Congress had not entered, and in that setting felt free to provide an appropriate remedy.

Although Congress may have been relatively inactive in legislative protection for constitutional violations by federal officers, it has moved rather spectacularly into the parallel field involving state action. This is illustrated not only by section 1983 and other 19th Century civil-rights statutes, but also by such complex and comprehensive legislation as the Civil Rights Act of 1964 and its subsequent amendments.

In spite of its active awareness of its power to enforce the Fourteenth Amendment against state and local governments, however, Congress has deliberately chosen to exclude vicarious liability against municipalities from the scope of section 1983.[11] Indeed, even after *Monroe* held that municipalities were totally protected from section 1983 liability, Congress resisted attempts to counter the effects of that decision by amending the statute, *see Mahone v. Waddle*, 564 F.2d 1018, 1059–60 (3d Cir. 1977) (Garth, J., dissenting and concurring), choosing instead to proceed more cautiously in the field of municipal liability.[12] Surely it is appropriate for the federal judiciary to respect that considered legislative reticence.

This is especially so in light of the distinct enforcement roles of Congress under the terms of the Fourth and Fourteenth Amendments. Section 5 of the Fourteenth

---

interpretations of its exclusion of municipalities provides such a statement. *Crosley v. Davis*, 426 F.Supp. 389, 394–95 (E.D.Pa.1977). *Accord*, Note, *Damage Remedies Against Municipalities For Constitutional Violations*, 89 Harv.L.Rev. 922, 939–45 (1976); *Congressional Action, supra*, 36 Md.L.Rev. 123, 140–42 (1976).

9. A similar, though more precisely stated, concept is offered by Mr. Justice Harlan in his concurrence wherein he reformulates the question to be "whether compensatory relief is 'necessary' or 'appropriate' to the vindication of the interest asserted." 403 U.S. at 407, 91 S.Ct. at 2010. Some courts have found analysis of the *Bivens* doctrine more manageable in Mr. Justice Harlan's terms than in those of the majority. *E. g., Crosley v. Davis, supra*, 426 F.Supp. at 394–97.

10. Section 1983, of course, applies only to actions grounded in state authority, and the Federal Tort Claims Act was not amended to cover such intentional torts as were involved in *Bivens* until 1974. Act of March 16, 1974, Pub.L. 93–253, § 2, 88 Stat. 50, *amending* 28 U.S.C. § 2680(h).

11. *Monell v. Department of Soc. Serv., supra*, —— U.S. at ——, 98 S.Ct. 2018.

12. In 1972, for example, municipalities were subject to liability for *some* civil rights violations from which they had previously been exempt under the Civil Rights Act of 1964. Equal Employment Opportunity Act of 1972, Pub.L. No. 92–261, § 2(1), (2), 86 Stat. 103, 42 U.S.C. § 2000e(a), (b).

Amendment [13] appears to anticipate a central role for Congress in implementing the amendment's guarantees. An analogous provision is not found in the Fourth Amendment, the basis of the remedy in *Bivens.* See *id.* at 1059 (Garth, J., dissenting and concurring); *Raffety v. Prince George's County,* 423 F.Supp. 1045, 1058 (D.Md.1976); *Congressional Action, supra,* 36 Md.L.Rev. at 146–47. We believe section 5 of the Fourteenth Amendment counsels an especially heightened sensitivity to the traditional role of Congress in implementing constitutional principles through the legislative process. In dealing with the Fourteenth Amendment, we would show inadequate deference to that role were we to use the courts to accomplish what the legislature has legitimately refused to do.

b. *Federalism.*

Another consideration which cautions against the extension of the *Bivens* doctrine to municipalities pertains to federalism. This factor, of course, was totally absent in *Bivens,* where the action was against United States government officers only. But the competing interests of our federal system are directly confronted when liability based upon the Constitution is imposed upon subdivisions of the states.

> The authorization of tort actions against the fisc is a delicate matter, especially when an instrumentality of the state is concerned. . . . [Although the Eleventh Amendment does not prohibit such remedies against municipalities], the values of federalism embodied [in that amendment] have similar force in this context and, at the very least, the creation of actions against the treasuries of local government bodies is a sensitive political matter. In light of these considerations and the deliberate exclusion . . . from § 1983 [of vicarious liability against municipalities], the power of federal courts to make such entities liable through a different means should not lightly be inferred.

*Kostka v. Hogg,* 560 F.2d 37, 44 n.6 (1st Cir. 1977). *Accord, Farnsworth v. Orem City,* 421 F.Supp. 830, 831 (D.Utah 1976); *Perzanowski v. Salvio,* 369 F.Supp. 223, 230–31 (D.Conn.1974). *But see Congressional Action, supra,* 36 Md.L.Rev. at 143–45.

If the federal courts inject themselves too rapidly into disputes between local governments and individual citizens, the states and their political subdivisions will likely be inhibited from seeking creative, efficacious resolutions to such disputes. This is no less true when the controversy involves a federal constitutional right.

The validity of this proposition is aptly demonstrated by what has occurred in California where Molina's deprivation occurred. The Supreme Court of that state has recently declared that public employees are entitled to reimbursement from their agency employers for nonpunitive damages incurred in section 1983 actions, provided the employee was acting within the scope of his authority. *Williams v. Horvath,* 16 Cal.3d 834, 129 Cal.Rptr. 453, 548 P.2d 1125 (1976) (en banc). Thus, with respect to actual damages suffered, plaintiffs injured by municipal employees, as was Molina, have full access to the "deep pocket" of California local governments through the medium of a section 1983 action against the offending officials. Such state-originated remedies which at once serve the interests of federalism and guard constitutional values would be less likely to emerge if the federal judiciary exercised insufficient restraint when invited to produce its own solutions to every perceived need to protect individual rights against local government action.

We do not decide that federalism concerns strictly preclude the extension of vicarious liability against municipalities under the *Bivens* rationale. But we are convinced that those concerns are sufficiently implicated in constitutional torts against local governments that the creation of such causes of action by the federal judiciary is

13. Section 5 provides: "The Congress shall have power to enforce, by appropriate legislation, the provisions of this article."

not in the interests of a sound federal equilibrium.

c. *The adequacy of section 1983.*

A primary concern of the majority in *Bivens* was that unless the Court allowed a cause of action directly under the Constitution, the plaintiff would be left to his state remedies which might "be inconsistent [with] or even hostile" to the interests protected by the Fourth Amendment. 403 U.S. at 394, 91 S.Ct. 1999. There was no federal statute pursuant to which Bivens could sue. Molina faces no such predicament, for section 1983, a remedy incorporating by reference the protections of the Constitution itself, is available to him. Indeed, he recovered against the defendant police officers in this case under that very statute. Thus, Molina who had a statutory cause of action directly under the Constitution, was manifestly in a different position than was Webster Bivens. *See Crosley v. Davis,* 426 F.Supp. 389, 395 (E.D.Pa.1977); *Livingood v. Townsend,* 422 F.Supp. 24, 27 (D.Minn. 1976); *Pitrone v. Mercadante,* 420 F.Supp. 1384, 1389 (E.D.Pa.1976).

Those advocating the extension of *Bivens* to municipalities make much of the argument that a remedy against individual officers alone may be inadequate since juries might hesitate to impose liability upon officers who, apparently, were acting in good faith, and since such defendants are often judgment proof anyway. They also assert that remedies directly against municipalities may more effectively deter future wrongdoing than do lawsuits against the lower level employees who actually perpetrate the wrong.

We are not persuaded. We find it significant that *Bivens* simply does not assist as a logical springboard for the extension suggested. There, the recovery was against the individual federal officers involved, and not against their "deep-pocketed" employer, the United States. Thus, the true analogue to *Bivens* liability for wrongs committed by agents of a municipality is precisely that provided by section 1983. Further, neither Molina nor the amicus in this case has demonstrated to us "that section 1983 plaintiffs are not being justly compensated for violations of their constitutional rights under color of state authority." *Clipper v. Takoma Park,* No. 73–295–B, slip op. at 24 (D.Md. March 25, 1975). Indeed, as stated earlier, California public employees are entitled to indemnification for compensatory damages judgments against them in federal civil rights actions, *Williams v. Horvath, supra,* 16 Cal.3d 834, 129 Cal.Rptr. 453, 548 P.2d 1125, and Molina has thus not been faced with the prospect of insolvent judgment debtors. Our response to the concern about additional deterrent effect and to the fear that jury sympathies will unfairly favor defendants in section 1983 actions against individual officers is that these factors are speculative at best. We decline to premise major judicial policymaking on such grounds.

d. *Conclusion.*

By declining to allow Molina's cause of action against the city directly under the Fourteenth Amendment, we do not denigrate the importance of the interests protected by that amendment. We merely conclude that the considerations discussed above persuasively warn that creation by the federal judiciary of a certain remedy to protect those interests is, in this case, inappropriate.[14] We stress that if the remedy sought here is socially desirable, nothing

14. We recognize that the propriety of allowing actions against municipalities directly under the Constitution may depend upon the specific right being protected. For example, even before *Bivens* was decided, this court recognized the possibility of an action against a local government for the uncompensated taking of property for public use as proscribed by the Fifth Amendment and applied to the states through the Fourteenth Amendment. *Miller v. County of Los Angeles,* 341 F.2d 964 (9th Cir. 1965). *See also, Jacobson v. Tahoe Reg. Plan. Agency,* 566 F.2d 1353 (9th Cir. 1977), *cert. granted, sub nom. Lake Country Estates, Inc. v. Tahoe Reg. Plan. Agency,* ⸺ U.S. ⸺, 98 S.Ct. 2843, 56 L.Ed.2d 784 (1978). The Fifth Amendment's explicit requirement that compensation be paid for such takings is, of course, an important factor distinguishing such actions from that proposed by Molina in this case.

prevents the more appropriate national, state, or local institutions of government from supplying it.

## III. *Attorney's Fees*

■ Without explanation, the district judge denied the request of Molina's counsel for attorney's fees against the defendant officers when he entered judgment on April 12, 1976. This occurred between the Supreme Court's decision in *Alyeska Pipeline Serv. Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), which generally disapproved of awards of attorney's fees to prevailing parties in federal litigation in the absence of statutory authority, and the October 19, 1976, effective date of the Civil Rights Attorney's Fees Award Act of 1976, Pub.L. No. 94–559, 90 Stat. 2641, *amending* 42 U.S.C. § 1988,[15] which supplied just such authority. The district judge may thus have believed he was bound by *Alyeska.*

We have recently decided that the new statute applies to cases pending on appeal. *Fountila v. Carter*, 571 F.2d 487, 496 (9th Cir. 1978); *Stanford Daily v. Zurcher*, 550 F.2d 464, 466 (9th Cir. 1977), *rev'd on other grounds*, —— U.S. ——, 98 S.Ct. 1970, 56 L.Ed.2d 525 (1978). Molina's counsel is thus entitled to have his petition reconsidered in light of amended section 1988. We therefore vacate the denial of the petition for attorney's fees and remand for further consideration of that issue.

This does not imply, however, that the district judge's decision to deny attorney's fees in this case was necessarily incorrect. The statute explicitly places that decision within the discretion of the trial judge, and he may well decline to alter his original disposition.[16]

## AFFIRMED IN PART, VACATED AND REMANDED IN PART.

GRANT, District Judge, dissenting:

I dissent from that portion of the opinion in which the majority takes the position that the extension of the *Bivens* doctrine to allow a cause of action against the city directly under the Fourteenth Amendment is not constitutionally required and, further, that as a matter of judicial discretion it would not be appropriate. While I would agree, (in light of the holdings in several other Circuits, see e. g., *Gagliardi v. Flint*, 564 F.2d 112 (3rd Cir. 1977); *Calvin v. Conlisk*, 520 F.2d 1 (7th Cir. 1975); *Williams v. Brown*, 398 F.Supp. 155 (N.D.Ill.1975), and amidst strong indications from the Supreme Court, *City of Kenosha v. Bruno*, 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973)), that the *Bivens* result is not constitutionally required, I cannot agree that it is inappropriate to supply a remedy for the alleged violation of Molina's constitutional rights directly under the Fourteenth Amendment.

I agree with the majority that the recent decision by the Supreme Court in *Monell v. Department of Social Services*, —— U.S. ——, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), does not give Plaintiff-Appellant Molina a Section 1983 cause of action against the

---

**15.** Amended 42 U.S.C. § 1988 provides in relevant part:

In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92–318, or in any civil action or proceeding by or on behalf of the United States of America, to enforce, or charging a violation of, a provision of the United States Internal Revenue Code, or title VI of the Civil Rights Act of 1964, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

**16.** Consideration of the attorney's fees request should be undertaken in light of the policy which Congress sought to effectuate in enacting the statutory attorney's fees provision. *See* S.Rep. No. 94–1011, 94th Cong., 2d Sess. 3, *reprinted in* [1976] U.S.Code Cong. & Admin. News, p. 5908. The court should also take note of the policy announced in *Schaeffer v. San Diego Yellow Cabs, Inc.*, 462 F.2d 1002, 1008 (9th Cir. 1972), which states that "the amount of the award should also be proportionate to the extent the plaintiff prevails in the suit." *See also Fountila v. Carter*, 571 F.2d 487, 495–96 (9th Cir. 1978); *Kerr v. Screen Extras Guild*, 526 F.2d 67, 69–70 (9th Cir. 1975), *cert. denied*, 425 U.S. 951, 96 S.Ct. 1726, 48 L.Ed.2d 195 (1976); *Pacific Coast v. Sunkist Growers*, 526 F.2d 1196, 1210 (9th Cir. 1975), *cert. denied*, 425 U.S. 959, 96 S.Ct. 1741, 48 L.Ed.2d 204 (1976).

city. However, I would point out that, as I read *Monell*, a future plaintiff in a similar situation as Molina would certainly be entitled to allege, and attempt to prove that the given actions of a police officer were more than the acts of an employee on a *respondeat superior* basis and indeed that they rose to the level of an "official policy or custom" employed by the police department as a whole. If sufficiently proved, such a plaintiff, under *Monell*, would have a direct cause of action against the municipality as an entity responsible under Section 1983.

While the majority takes note of the often heard argument that enactment of 42 U.S.C. § 1983 created the exclusive remedy for constitutional violations committed under color of state authority, the basis for their holding is that it would be an unwise use of judicial power to allow the extension of the *Bivens* doctrine. The initial rationale for this view is respect for the role of Congress in the implementation of constitutional guarantees. This argument hinges upon the fact that in *Bivens*, the Supreme Court was effectuating a remedy in a field untouched by Congress, while here, Section 1983 and other statutory legislation exists.

This position states nothing more than because of the fact that Section 1983 exists, the Congress itself has determined that municipalities should not be liable directly under the Fourteenth Amendment. The problem with this argument is that it goes directly against the strong presumption that the courts should always be kept open to redress alleged violations of constitutional rights unless it can be said explicitly that Congress in fact intended to close them. *See* Hart & Wechsler, Hart and Wechsler's The Federal Courts and The Federal System, 332, at 336 (2nd ed. 1973). This policy of clear statement becomes even more important when, as here, a remedy is precluded upon the basis of ambiguous statutory language. The language of Section 1983 itself purports only to authorize a cause of action against "every person" who commits a constitutional violation under color of state law. Not until the Court construed the word "person" in *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961),

could it even be said that Section 1983 did not contemplate municipal liability. That determination in *Monroe* rested upon the intricacies of the Senate-passed Sherman amendment which was dropped from the 1871 Act because of objections by the House. *Gagliardi v. Flint*, 564 F.2d 112, 122–126 (3rd Cir. 1977). *See also* Note, *Damage Remedies Against Municipalities for Constitutional Violations*, 89 Harv.L. Rev. 922, 942–945 (1976). After the recent decision in *Monell v. Department of Social Services*, —— U.S. ——, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), reversing that analysis of the Court as it pertained to the Sherman amendment, an even stronger argument can now be made that Congress has not determined that municipalities should not be liable under the Fourteenth Amendment. While the legislative history surrounding the 1871 Act might still be relevant in ascertaining the remedies that statute was intended to create, it should not be taken as an explicit indication from Congress that courts should be precluded from creating a constitutional remedy in damages against municipalities. Indeed, it would seem to be an unwise use of judicial power, and inconsistent with the principles of clear statement, to extrapolate from the tarnished analysis of ambiguous statutory language in *Monroe* and conclude that Congress has explicitly determined to preempt the field of municipal liability when the result seriously restricts the remedies available to a court in constitutional adjudication.

The majority also argues that the principles of federalism caution against extension of the *Bivens* doctrine to municipalities. The fear is that if federal courts inject themselves too hastily, the state and local governments will be inhibited from seeking resolutions themselves. However, it would seem to the writer that the threat of a federal monetary claim against a municipality would enhance rather than inhibit the potential for resolution. It cannot be denied that recognition of a federal monetary claim might alter the operation of municipal governments, but this should not be objectionable to the extent such changes reflect constitutional values.

It should also be noted that piecemeal litigation will often be the result if federalism requires that a plaintiff be left with only his state monetary remedies against a municipality. Of course, a litigant can always resort to his state remedies. But, since the Supreme Court decision in *Aldinger v. Howard*, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976), pendent party jurisdiction is not available in a Section 1983 action to join a municipality sued on a state claim. Thus, the litigant is faced with the burden of a separate lawsuit against the municipality, in addition to his Section 1983 cause of action against the municipal employee. Further, in light of the availability of equitable relief to enforce the Fourteenth Amendment, it seems a contradiction to say that the dictates of federalism must bar interference in local affairs. One need only look to the intricate plans imposed by the judiciary in school desegregation cases such as *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 91 S.Ct. 1267, 28 L.Ed.2d 554 (1971), to see that federalism can tolerate intervention into local affairs far beyond any threat created by imposition of money damages.

Finally, the majority argues that while, in *Bivens*, the Court was concerned that without a cause of action directly under the Constitution, the state remedies left to Plaintiff Bivens might well have been inadequate, here they contend that Section 1983 is adequate and relieves Molina of the predicament faced by the plaintiff in *Bivens*. This writer cannot conclude that the damage remedies currently provided by Section 1983 for the redress of important constitutional rights can realistically be termed as adequate. This view goes beyond the problems of identification of proper individual defendants, their inability to pay judgments, and jury sympathy toward defendants perceived to be acting in good faith. In the final analysis, the adequacy of any remedy must be viewed in terms of its deterrent effect. The remedy currently allowed by Section 1983 does little to deter the municipality from altering its unconstitutional actions. On the other hand, with a cause of action directly under the Constitution, a municipality would seem to be put to a simple choice. It can either pay damages or institute the changes necessary to eliminate the constitutional deprivation.

The majority concludes that the use of the federal judiciary to create a remedy in this case is inappropriate. I must respectfully disagree and conclude that there can be no more appropriate role for the judiciary than to insure that the interests protected by the Fourteenth Amendment are given their full meaning and scope. As a result, I would reverse the District Court's decision, find jurisdiction to exist under 28 U.S.C. § 1331, and infer a cause of action against the city directly from the text of the Fourteenth Amendment.